**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

SENECA NATION OF INDIANS,

   Petitioner/Cross-Petition Respondent,

v.

STATE OF NEW YORK,

   Respondent/Cross-Petitioner.

Civil Case No. 19-cv-00735

# CROSS-PETITION TO CONFIRM PARTIAL FINAL AWARD AND CORRECTED FINAL AWARD

The State of New York (the "State") hereby seeks an order confirming Partial Final Award, dated January 7, 2019 (the "Partial Final Award"), and the Corrected Final Award dated April 12, 2019 (the "Corrected Final Award" and, collectively with the Partial Final Award, the "Awards"), entered in in favor of the State in American Arbitration Association Case Number 01-17-0005-3636 (the "Arbitration"). Copies of the Awards are attached as Exhibits A and B to the Declaration of Carol E. Heckman ("Heckman Declaration"), in support of the *Petition to Vacate Final Arbitration Award* ("Petition") filed on June 6, 2019 by Petitioner Seneca Nation of Indians ("Nation") [ECF 1].[1]

## PARTIES

1. The Parties in this matter are the State of New York ("State"), and the Seneca Nation of Indians ("Nation"), a federally recognized sovereign Indian nation located in Western New York.

---

[1] References to Nation Exhibits ("Nation Ex.") are to documents attached as exhibits to the Heckman Declaration.

## JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because the underlying dispute pertains to Nation-State Gaming Compact Between the Seneca Nation of Indians and the State of New York dated August 18, 2002 (the "Compact") (Nation Ex. D), a gaming compact entered into and approved by the Secretary of the United States Department of the Interior pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 ("IGRA"); IGRA is a law of the United States enacted pursuant to the power of Congress to regulate Commerce with Indian Tribes, U.S. CONST., Art. I, § 8; and confirmation of the Awards is sought under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9.

3.  Venue in this district is proper pursuant to the venue provision of the FAA, 9 U.S.C. § 9; the general venue statute, 28 U.S.C. § 1391(b); and the "Arbitration Decision" clause of the Compact, ¶ 14(i).

## BACKGROUND

The Compact

4.  The Parties agreed to and entered into the Compact on August 18, 2002. The Compact was deemed approved by the Secretary of the United States Department of the Interior ("DOI") on November 12, 2002. The Compact became effective on December 9, 2002 (the "Effective Date"), when the Secretary of the Interior published notice of approval of the Compact in the Federal Register, as required by IGRA and the Compact. Compact ¶ 4(a).

5.  Under the Compact, the State provides the Nation with exclusive rights to operate certain casino-style gambling operations in an expansive area of Western New York covering lands outside the reservation territories of the Nation (the "Exclusivity Area"). Compact ¶ 12(a)(1). In exchange, the Nation agreed to pay to the State a portion of the Nation's proceeds from the

gambling operations, the so-called "State Contribution". Compact ¶ 12(b)(1).

6. The Compact provided for an initial term of 14 years, to commence on the Effective Date. Compact ¶ 4(a). During the initial 14-year period, the State provided the agreed-to exclusivity of gambling operations, and the Nation paid the State Contribution.

7. The Compact provides that, unless one of the Parties objects in writing to the other Party at least 120 days before the termination date, the Compact automatically renews for an additional seven years. Compact ¶ 4(c)(1). Neither Party gave notice of objection within 120 days of the end of the initial 14-year period. Accordingly, the Compact renewed automatically on December 9, 2016 for an additional seven years (the "Renewal Period").

The Dispute and Arbitration

8. After the Compact automatically renewed, the Nation took the position that it was not bound to pay the State Contribution during the Renewal Period. On March 31, 2017, the Nation declared it would make a "final" payment of the State Contribution for the fourth quarter of 2016 and that it would make no future payments.

9. Thereupon, the State submitted, in accordance with paragraph 14(c) and (f) of the Compact, a Demand for Arbitration to the American Arbitration Association against the Nation on September 7, 2017. The State alleged, *inter alia*, breach of contract and sought specific performance of the Nation's obligation to make State Contribution payments. *See* Nation Ex. N at 10.

10. The Parties thereafter constituted an arbitral tribunal ("Panel") pursuant to the Compact, with each Party selecting an arbitrator and the two party-selected arbitrators selecting a third arbitrator. The Parties submitted extensive briefing on the issues and an arbitration hearing proceeded before the Panel on December 12 and 13, 2018. At the end of the hearing, the Parties

agreed that the Panel would render separate awards regarding liability for breach of the Compact and, if a breach was found, the remedy.

11. The Compact expressly provides that disputes, claims, questions or disagreements as to particular provisions of the Compact are subject to the Compact's dispute resolution provisions. Compact ¶¶ 14(b), (d). The Compact also provides that the prevailing party in an arbitration may bring an action in this Court to enforce the award. *Id.* ¶ 14(i).

The Awards

12. The Panel considered all of the Parties' relevant arguments and evidence, and concluded that the Nation's obligation to make the State Contribution payments in exchange for the bargained-for exclusivity continued during the Renewal Period. The Panel issued a well-reasoned Partial Final Award in the State's favor on January 7, 2019, holding that the Nation's obligation to make State Contribution payments continued during the Renewal Period and ordering specific performance of the Nation's payment obligations. Nation Ex. B. The relevant legal merits of the Partial Final Award are discussed in detail in the State's *Memorandum of Law in Support of Opposition to Petition to Vacate Final Arbitration Award and Cross-Petition to Confirm Partial Final Award and Corrected Final Award* (the "State MOL"), submitted herewith.

13. The Parties thereafter met and conferred regarding a remedial order. The Parties agreed that the State Contribution payments outstanding during the Renewal Period amounted to $255,877,747.44. State Ex. F.[2] The Parties then submitted first a "Draft Final Award," and

---

[2] "State Ex." refers to the exhibits to the Declaration of Gregory M. Starner in Support of Opposition to Petition to Vacate Final Arbitration Award and Cross-Petition to Confirm Partial Final Award and Corrected Final Award, submitted herewith.

subsequently a "Draft Corrected Final Award," which corrected certain non-substantive clerical errors in the Draft Final Award. State Exs. H, I.

14. On April 12, 2019, the Panel issued the Corrected Final Award, which adopted the Draft Corrected Final Award jointly submitted by the Parties. Nation Ex. A. In accordance with the Compact and the Parties' submission regarding past due payments, the Panel directed that the Nation pay to the State $255,877,747.44 – the State Contribution amount outstanding during the Renewal Period, as determined by the Parties during their meet and confer.

15. The Nation does not contest that that the Compact gave the Panel jurisdiction to direct specific performance of its State Contribution payment obligation from the proceeds of the gambling operation for which the State provides exclusivity. The Nation also does not contest that it waived any sovereign immunity for purposes enforcing the Awards in this Court. *See* Compact ¶ 14(i).

The Petition

16. The Nation filed its Petition to Vacate Final Arbitration Award in this Court on June 6, 2019.

17. The Petition does not challenge the Panel's interpretation of the Compact which underlies the determination in the Partial Final Award that the Nation breached the Compact by refusing to make the State Contribution payments during the Renewal Period.

18. Instead, the Petition takes the position that (A) when the Panel interpreted the Compact and the Parties' intent reflected therein, it in fact "amended" the Compact, and (B) the Panel manifestly disregarded the requirement in IGRA that the Secretary of the DOI must approve amendments to IGRA gaming compacts.

19. As an initial matter, the Petition is time-barred in light of the FAA's strict requirement

that petitions to vacate must be filed within 90 days of the issuance of the award.

20. Additionally, as discussed in detail in the State MOL, the Panel did not disregard the IGRA requirement of Secretary approval for compact amendments. Rather, it acknowledged all of the Nation's arguments regarding that purported requirement, and determined (correctly) that the Panel did not amend the Compact when it interpreted the Compact in light of well-accepted principles of contract law, it simply resolved a question of contract interpretation in the Compact as approved by the Secretary.

21. The Petition does not contain any legal authority that supports the Nation's assertion that IGRA somehow operates to deprive the Panel of jurisdiction to resolve the contract-law dispute. Accordingly, the sole basis for the Petition—that the Panel manifestly disregarded a clear mandate of IGRA—fails.

22. There is also no basis for the Court to abdicate its jurisdiction and "refer" the enforcement proceeding to the DOI. There is no legitimate grounds to overrule the Parties' arbitration agreement or for this Court to forgo its role in enforcing the Awards.

23. Finally, the Nation does not allege any of the FAA's statutory bases for vacatur of an arbitral award under 9 U.S.C. §§ 10 or 11, and none applies to the Awards.

24. Because the Awards fully satisfy the requirements for confirmation and the Nation has failed to meet the high standards for vacatur under Section 10 of the FAA or under the Second Circuit's manifest-disregard jurisprudence, the Petition should be denied and the Court should confirm the Awards pursuant to Section 9 of the FAA.

**PRAYER FOR RELIEF**

25. This Cross-Petition is properly before the Court pursuant to the FAA, which requires the

Court to enter a judgment confirming the Awards where the Parties agreed that arbitral awards would be enforced in this Court and where no basis under statute or case law exists for vacatur. *See* 9 U.S.C. § 9.

26. The Court should also exercise its inherent discretion and order an award of reasonable attorney's fees to the State.

**THEREFORE,** the State requests that the Court enter a judgment confirming the Awards, granting the State reasonable attorneys' fees, and granting such other relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: July 12, 2019 | Respectfully submitted, |
| | /s/ *Gregory M. Starner* |
| | Gregory M. Starner |
| | Matthew L. Nicholson |
| | Lauri Kai |
| | WHITE & CASE LLP |
| | 1221 Avenue of the Americas |
| | New York, NY 10020 |
| | (212) 819-8200 |
| | gstarner@whitecase.com |
| | matthew.nicholson@whitecase.com |
| | lauri.kai@whitecase.com |
| | *Attorneys for the State of New York* |