**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

SENECA NATION OF INDIANS,

                Petitioner/Cross-Petition Respondent,

     v.

STATE OF NEW YORK,

               Respondent/Cross-Petitioner.

Civil Case No. 19-cv-00735

**MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO PETITION TO VACATE FINAL ARBITRATION AWARD AND CROSS-PETITION TO CONFIRM PARTIAL FINAL AWARD AND CORRECTED FINAL AWARD**

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES .......................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ...............................................................................................4

I.      THE COMPACT .................................................................................................4

II.     THE DISPUTE ....................................................................................................5

III.    THE ARBITRATION...........................................................................................7

IV.     THE PANEL ISSUES THE PARTIAL FINAL AWARD ON LIABILITY .....................7

V.      THE PANEL ISSUES A SUBSEQUENT FINAL AWARD ON REMEDIES ...............11

LEGAL STANDARD....................................................................................................13

ARGUMENT .................................................................................................................15

I.      THE PETITION'S CHALLENGE TO THE PARTIAL FINAL AWARD ON
        LIABILITY IS TIME BARRED ...........................................................................15

II.     THE PETITION DOES NOT ESTABLISH ANY VALID GROUND TO
        VACATE THE AWARDS ...................................................................................17

III.    THE PRIMARY JURISDICTION DOCTRINE DOES NOT DEPRIVE THIS
        COURT OF ITS JURISDICTION TO ENFORCE THE AWARDS ...............................22

IV.     THE AWARDS SHOULD BE CONFIRMED.........................................................26

V.      THE COURT SHOULD AWARD COSTS TO THE STATE......................................27

CONCLUSION...............................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905 (11th Cir. 2006) ............................28

*Celsus Shipholding Corp. v. Pt. Pelayaran Kananka Dwimitra Manunggal*, No. 06 Civ. 13598 (DLC), 2008 U.S. Dist. LEXIS 12842 (S.D.N.Y. Feb. 21, 2008) ..............................................................................................................................27

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ............................25

*Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108 (2d Cir. 1980) ..........................................17

*DigiTelCom, Ltd. v. Tele2 Sverige AB*, No. 12 Civ. 3082 (RJS), 2012 U.S. Dist. LEXIS 105896 (S.D.N.Y. July 25, 2012) ..............................................................28

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383 (2d Cir. 2003) ..........................................................................................................................17

*Ellis v. Tribune TV Co.*, 443 F.3d 71 (2d Cir. 2006) ..............................................................22, 23

*Fid. Brokerage Servs. LLC v. Deutsch*, 763 F. App'x 104 (2d Cir. 2019) ...................................14

*Florasynth, Inc. v. Pickholz*, 750 F.2d 171 (2d Cir. 1984) ..........................................................15

*Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*, 84 F.3d 91 (2d Cir. 1996) ..........................................................................................................................24, 26

*Glob. Gold Mining LLC v. Caldera Res., Inc.*, 941 F. Supp. 2d 374 (S.D.N.Y. 2013) ..................................................................................................................................16

*Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51 (2d Cir. 1994) ........................23

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008) .................................................14, 27

*Hatemi v. M & T Bank Corp.*, No. 13-CV-1103S, 2017 U.S. Dist. LEXIS 170017 (W.D.N.Y. Oct. 12, 2017) ......................................................................................15

*Landau v. Eisenberg*, 922 F.3d 495 (2d Cir. 2019) ..............................................................13, 26

*McGregor Van De Moere, Inc. v. Paychex, Inc.*, 927 F. Supp. 616 (W.D.N.Y. 1996) ..................................................................................................................................16

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930 (2d Cir. 1986) ................................................................................................................18, 21

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*, 863 F.3d 96 (2d Cir. 2017) ................................................................................................................26

N.Y. Hotel & Motel Trades Council v. Cf 43 Hotel, LLC, No. 16 Civ 5997 (RMB), 2017 U.S. Dist. LEXIS 91247 (S.D.N.Y. June 14, 2017) ........................27

*N.Y. State Thruway Auth. v. Level 3 Commc'ns, LLC*, 734 F. Supp. 2d 257 (N.D.N.Y. 2010) ..........................................................................................23

*New York v. Oneida Indian Nation*, 78 F. Supp. 2d 49 (N.D.N.Y. 1999) ....................23

*NFL Mgmt. Council v. NFL Players Ass'n*, 820 F.3d 527 (2d Cir. 2016) ..............17, 22

*Prospect Capital Corp. v. Enmon*, 08 Civ. 3721 (LBS), 2010 U.S. Dist. LEXIS 23477 (S.D.N.Y. Mar. 9, 2010), *aff'd*, 675 F.3d 138 (2d Cir. 2012) ....................28

*Rich v. Spartis*, 516 F.3d 75 (2d Cir. 2008) ......................................................13, 14

*Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444 (2d Cir. 2011) ....................................18

*Stemcor USA, Inc. v. Miracero, S.A. de C.V.*, No. 14-CV-0921 (LAK) (RLE), 2014 U.S. Dist. LEXIS 118504 (S.D.N.Y. Aug. 22, 2014) ..................................14

*T.Co Metals, LLC v. Dempsey Pipe & Supply*, 592 F.3d 329 (2d Cir. 2010) ..........14, 18

*Trade & Transport, Inc. v. Nat. Petroleum Charterers, Inc.*, 931 F.2d 191 (2d Cir. 1991) ............................................................................................................16

*Unite Here Local 100 v. Westchester Hills Golf Club, Inc.*, 161 F. Supp. 3d 262 (S.D.N.Y. 2016) ......................................................................................14, 18

*United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564 (1960) ..............................19

*Wallace v. Buttar*, 378 F.3d 182 (2d Cir. 2004) ........................................................21

*Wells Fargo Advisors v. Mercer*, No. 14 Civ. 9279 (ER), 2016 U.S. Dist. LEXIS 2407 (S.D.N.Y. Jan. 8, 2016), *aff'd*, 735 F. App'x 23 (2d Cir. 2018) ....................15

**STATUTES AND RULES**

25 C.F.R. § 293.4 ..............................................................................................19

9 U.S.C. § 9 ................................................................................................25, 26

AMERICAS 100112069

9 U.S.C. § 12 ..........................................................................................................................15

25 U.S.C. § 2710 ....................................................................................................................19

AMERICAS 100112069

Respondent/Cross-Petitioner, the State of New York (the "State") by and through its undersigned counsel, respectfully submits this memorandum of law in support of (i) its opposition to the *Petition to Vacate Final Arbitration Award*, dated June 6, 2019 [D.I. 1] (the "Petition"), by which Petitioner, the Seneca Nation of Indians (the "Nation," and, collectively with the State, the "Parties"), seeks an order vacating the Final Award dated April 12, 2019 (the "Corrected Final Award"), and (ii) cross-petition to confirm the Partial Final Award, dated January 7, 2019 (the "Partial Final Award") and Corrected Final Award, dated April 12, 2019 (the "Corrected Final Award," and, collectively with the Partial Final Award, the "Awards"), entered in in favor of the State in American Arbitration Association Case Number 01-17-0005-3636 (the "Arbitration").

## PRELIMINARY STATEMENT

This dispute arises under an agreement (the "Compact") between the Parties pursuant to which the State gave the Nation exclusive rights to operate gambling facilities within a specified geographic area, in exchange for the Nation sharing a portion of the revenues from its gambling operations with the State. During its initial term of fourteen years, both Parties abided by the Compact. However, after the Compact automatically renewed pursuant to its terms in December 2016, the Nation ceased making the required payments to the State and took the position it was no longer required to share any gaming revenue with the State, even though the State would continue to provide the Nation an exclusive gambling franchise for an additional seven years.

Pursuant to the broad arbitration provision in the Compact, the State initiated arbitration proceedings under the auspices of the American Arbitration Association. A three-member arbitration panel (the "Panel"), chaired by the Hon. William J. Bassler (D.N.J. Ret.), was

appointed to resolve the Parties' dispute. The Parties agreed to bifurcate the issue of liability, and after extensive briefing and a hearing the Panel issued the Partial Final Award on the issue of liability on January 7, 2019. After conducting a careful analysis of the Compact, the evidence presented by the Parties and applicable law, the Panel determined that the Nation's obligation to make revenue sharing payments to the State continued during the Compact's seven-year "Renewal Period". The Parties thereafter agreed to the terms of a supplemental final award on remedy, which specified the dollar amount of the Nation's outstanding payments through the end of 2018, and the Panel thereafter entered the Corrected Final Award, in the terms agreed by the Parties, on April 12, 2019.

Unhappy with the Panel's ruling, the Nation filed the Petition seeking to vacate the Corrected Final Award. Recognizing the extremely limited scope of the Court's review of arbitration awards, the Nation does not challenge the Corrected Final Award on the basis of any purported defect in the Panel's analysis or interpretation of the Compact. Instead, the Nation asserts that the Panel issued the Corrected Final Award in manifest disregard of the law because its interpretation of the Compact constituted an amendment to the Compact which the Secretary of the Interior must approve pursuant to the Indian Gaming Regulatory Act ("IGRA"). The Nation's position is without merit.

<u>First</u>, the Petition is time-barred. The FAA provides for a three-month statute of limitations period for any actions seeking to vacate an arbitration award. Here, the Partial Final Award—which determined the central issue of contractual interpretation which the Nation seeks to attack in the Petition—was issued and received by the parties on January 7, 2019, and the Petition was filed almost two months after the statute of limitations had expired on April 7, 2019.

Second, the Panel did not "intentionally misapply" or "willfully flout" any controlling law, which is the extremely high bar required to vacate an award on the basis of manifest disregard of the law. To the contrary, the Panel considered and rejected all the same arguments that the Nation seeks to relitigate in the Petition. The Panel clearly recognized its authority and role in enforcing and interpreting the terms of the Compact, and did not "usurp" the Secretary's jurisdiction under IGRA. IGRA did not (and does not) divest the Panel of its jurisdiction to decide the Parties' dispute. The Compact was previously approved by the Secretary consistent with IGRA, and the Panel's resolution of the Parties' contract dispute does not somehow constitute an amendment to the Compact or any new agreement that would require a new approval from the Secretary.

Third, there is no basis to defer or stay confirmation of the Awards. The Parties expressly agreed to arbitrate their dispute, and also agreed that the State could enforce the Awards against the Nation in this very Court. The Nation's suggestion that the Court should abdicate its jurisdiction and "refer" the Parties' dispute to the Secretary is without merit. The primary jurisdiction doctrine does not apply here, and provides no basis to overrule the Parties' arbitration agreement or for the Court to abdicate its role in enforcing the Awards. Further, the United States Department of the Interior ("DOI") has expressly declined to review the Awards as "amendments."

Fourth, the Awards are a product of the Panel's well-reasoned decision-making and amply supported by applicable law, and should be confirmed.

Because there is no basis to vacate the Awards, and all the requirements for confirmation are satisfied, the Court should deny the Petition and grant the State's Cross-Petition to Confirm

the Awards.

**STATEMENT OF FACTS**

**I.    THE COMPACT**

In 1998, the Nation sought to negotiate a gaming compact with the State that would allow the Nation to conduct casino-type gambling operations in certain parts of New York.  Following lengthy negotiations, the Parties agreed to and entered into the Nation-State Gaming Compact between the Seneca Nation of Indians and the State of New York dated August 18, 2002 (the "Compact").  The Compact was deemed approved by the Secretary of the Interior on November 12, 2002.  The Compact became effective on December 9, 2002 (the "Effective Date"), when the Secretary of the Interior published notice of approval of the Compact in the Federal Register, as required by IGRA and the Compact.  Compact ¶ 4(a).

The Compact provides the Nation with the exclusive right to install and operate certain casino-type gaming devices (including slot machines) in an expansive area of Western New York covering lands outside the reservation territories of the Nation (the "Exclusivity Area"). Compact ¶ 12(a)(1).  As consideration for the grant of such valuable exclusivity, the Nation agreed to pay to the State a portion of the Nation's proceeds from the gambling operations, the so-called "State Contribution".  Compact ¶ 12(b)(1).  The State Contribution constitutes the sole consideration that the State receives under the Compact.

The Compact provided for an initial term of 14 years, to commence on the Effective Date.  Compact ¶ 4(a).  Thus, the original termination date of the Compact was December 9, 2016.  During the initial 14-year period of the Compact, the Nation enjoyed its right of exclusivity and developed three Class III gaming facilities in the Exclusivity Area, which have

generated collectively billions in gaming revenues for the Nation. *See* State Ex. A (September 12, 2018 Witness Statement of Robert Williams at ¶ 15 ("My understanding is that the Nation's gaming revenues . . . have been in the range of $6.5 billion.")). During the initial 14-year period the Nation also paid the State Contribution, which the State used, *inter alia*, to finance public services in communities in which the Nation's casinos are located, particularly Buffalo, Niagara Falls and Salamanca.

The Compact provides that, unless one of the Parties objects in writing at least 120 days before the termination date, the Compact automatically renews for an additional seven years. Compact ¶ 4(c)(1). Neither Party gave notice of objection within 120 days of the end of the initial 14-year period. Accordingly, the Compact renewed automatically on December 9, 2016 for an additional seven years (the "Renewal Period"), remaining in effect until December 9, 2023.

## II. THE DISPUTE

Even though the Nation has continued to enjoy exclusivity under the Compact within the Exclusivity Area during the Renewal Period, the Nation has refused to pay the State Contribution. On March 31, 2017, the Nation declared it would make a "final" payment of the State Contribution for the fourth quarter of 2016 and that it would make no future State Contribution payments. State Ex. B (Letter from Gates to Cuomo dated March 31, 2017). The Nation took the position that it was not bound to pay the State Contribution during the Renewal Period.

In the Compact, the Parties agreed to a dispute resolution process that required submission of any disputes to binding arbitration. Specifically, the Compact provides that "[i]n

the event of any dispute, claim, question, or disagreement arising from or relating to this Compact or the breach [t]hereof," the Parties will first engage in good faith negotiations. Compact ¶ 14(b). If negotiations fail, then after 30 days, "either Party may submit the dispute, claim, question, or disagreement to binding arbitration" (Compact ¶ 14(c)), to be conducted in accordance with the rules of the American Arbitration Association (the "AAA") (Compact ¶ 14(f)). Under the AAA's rules, which the Parties agreed would apply, "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract." State Ex. C (Commercial Arbitration Rules and Mediation Procedures, American Arbitration Association, Rule 47(a)).

When the Nation refused to make the State Contribution payments during the Renewal Period, the State submitted, in accordance with paragraph 14(c) and (f) of the Compact, a Demand for Arbitration to the American Arbitration Association against the Nation on September 7, 2017. The Demand for Arbitration alleged, *inter alia*, breach of contract and sought specific performance of the Nation's obligation to make State Contribution payments. *See* Nation Ex. N at 10.[1]

The Parties thereafter constituted an arbitral tribunal ("Panel") pursuant to paragraph 14(e) of the Compact, comprised of three arbitrators. Compact ¶ 14(e). The Nation appointed Dean Kevin Washburn from the University of Iowa College of Law. The State appointed Henry

---

[1] The Compact permits an arbitral panel to issue "[a]n arbitration award against the Nation for specific performance that entails the payment of money to the State [to] be satisfied solely and exclusively from the revenues of the Nation's Class III Gaming Facilities operated pursuant to this compact." Compact ¶ 14(h).

Gutman, Esq., Of Counsel at the law firm of Simpson Thacher & Barlett LLP in New York. The Parties then agreed to select the Honorable William G. Bassler (Ret.) as the Chair of the Panel. Judge Bassler served as a United States District Judge of the United States District Court for the District of New Jersey from 1991 until 2006.

## III. THE ARBITRATION

The Parties submitted extensive briefing and an arbitration hearing proceeded before the Panel on December 12 and 13, 2018. The State presented written and live testimony from Robert Williams, Deputy Secretary in the Office of the New York State Governor Andrew Cuomo, and one of the negotiators of the Compact. The Nation offered (written) testimony from Todd Gates, President of Seneca Nation of Indians, and David Sheridan, Chief Financial Officer at Seneca Gaming Corporation. The Nation did not present testimony from anyone involved in the negotiation of the Compact. Partial Final Award at 38; State Ex. D (December 12, 2018 Hr'g Tr. at 12:19-24; 96:14-97:8).

At the end of the hearing, the Parties agreed that the Panel would render separate awards regarding liability for breach of the Compact and, if a breach was found, the remedy. Accordingly, by a procedural order entered on December 17, 2018, the Parties "jointly agreed to bifurcate the issues of liability and remedy." State Ex. E (Procedural Order No. 4, ¶ 2). The Parties agreed that "[if] the Panel finds liability, then the Parties will meet and confer with respect to proposed terms of a remedial order and provide a joint report to the Panel no later than 30 days following the liability award." *Id.* ¶ 4.

## IV. THE PANEL ISSUES THE PARTIAL FINAL AWARD ON LIABILITY

On January 7, 2019, the Panel issued a Partial Final Award in the State's favor, holding

that the Nation's obligation to make State Contribution payments continued during the Renewal Period and ordering specific performance of the Nation's payment obligations. Partial Final Award at 55. The Partial Final Award was 56 pages, and primarily focused on whether the Nation's obligation to make State Contribution payments continued during the Renewal Period. *See* Mem. at 21.[2] The Panel considered all of the Parties' relevant arguments and evidence, and ultimately came to a well-reasoned conclusion that the Nation's obligation continued during the Renewal Period in exchange for the bargained-for exclusivity.

First, the Panel attempted to determine the Parties' intent as to the Nation's continuing obligation to pay the State Contribution from the four corners of the Compact, taking into consideration the understood purpose of the Compact (exclusivity in exchange for State Contribution), the term provision (14-year term), the renewal provision (automatic 7-year renewal absent objection), and other Compact provisions. Partial Final Award at 24-36. Ultimately, the Panel found that the Compact was ambiguous as to whether the State Contribution payments continued or ceased after the initial 14-year term of the Compact. *See id.* at 24, 36.

Second, consistent with both New York state and federal common law on contract interpretation, the Panel resolved the ambiguity by considering extrinsic evidence put forth by both Parties. *See id.* at 36-48. That evidence included the Parties' pre-execution negotiations as well as post-execution communications (including each Party's submissions to the DOI seeking the Secretary's approval of the Compact). As to the evidence regarding the Parties' pre-execution negotiations, the Panel noted that this case is "not a situation in which silence in the

_____

[2] Citations to "Mem." herein are to the Nation's Memorandum of Law in Support of the Petition. [D.I. 2-1]

negotiating history about the Nation's current interpretation of its obligations during the renewal period is a neutral fact, much less cuts against the State." Partial Final Award at 40. Particularly given that the "central premise of the Compact" was that the Nation would receive exclusivity in exchange for payment of the State Contribution, the Panel noted that

> "[t]he notion that the parties somehow agreed that during the renewal period — for as much as seven years — the State would be obligated to provide exclusivity, but the Nation would pay nothing, without a single scrap of paper or witness recollection that this deviation from the basic bargain was even discussed, simply defies credulity." Partial Final Award at 40.

As to the evidence regarding the Parties' post-execution negotiations, the Panel observed that "[n]either the Nation's post-execution letter to the Department of the Interior nor the Nation's information sharing documents to its members about the meaning of the Compact suggest that the Nation's revenue sharing payment obligations cease in the renewal period." *Id.* at 41.

Third, the Panel employed additional contract-interpretation tools, including consideration of the commercial context in place as of the Compact's execution, common sense and commercial reasonableness. Partial Final Award at 36-53.

Each of the legal conclusions regarding the Compact in the Partial Final Award was supported by legal authority. *See id.* Accordingly, a majority of the Panel found in the State's favor, concluding that:

> the Compact read as a whole and in light of the extrinsic evidence supports the conclusion that "renewal" means that the Compact was continued on the same terms and conditions that were in place immediately prior to expiration of the Compact's initial term which entailed revenue sharing for exclusivity. To conclude otherwise and interpret "renew" to mean that the Nation gets exclusivity without sharing revenue would render several provisions of the Compact meaningless, ignore the purpose of the Parties' agreement, challenge common sense and produce a commercially unreasonable result. As the party claiming

breach of contract, the State has met its burden of proof.

*Id.* at 54.

Finally, Panel gave due consideration to the Nation's contention—which the Nation repeats without variation in the Petition—that the Panel "conflated its views as to the proper interpretation of the Compact's revenue sharing" with the question of whether the Secretary approved revenue sharing during the Renewal Period. *See* Mem. at 21-23. The Panel then rejected the contention on three entirely cogent bases. One, the Panel found that "[t]here is no evidence in the record to suggest that the DOI shared the view now asserted by the Nation," namely "that 'renewal' did not include revenue sharing." Partial Final Award at 42. Two, the Panel found that "renewal was part of the Compact that was reviewed and deemed approved" by the DOI such that "[i]f . . . the Secretary did not approve the terms of renewal, then that arguably would mean that renewal of the Compact was not properly authorized and the Nation's gaming activities are unlawful." *Id.* Three, and of greatest significance to the Petition, the Panel found that

> while it is beyond dispute that the Panel has no legal authority to usurp the Secretary's role and enforce a Compact term that the Secretary did not approve, see 25 U.S.C. § 2710(d)(8) (approval and disapproval of Compact provisions are the exclusive province of the Secretary under IGRA), the Panel does have the duty and authority to determine whether the terms of the Compact already provide for revenue sharing payments upon renewal.

> Partial Final Award at 42 (emphasis added).

The Panel left no room for doubt that the Partial Final Award set forth the full and final adjudication on liability. The Panel thus declared that "[t]he Nation is in breach of its obligations under ¶¶ 4(c)(1) and 12(b) of the Compact by failing to pay the State Contribution after the Compact's renewal"; and that "the Nation remains obligated under ¶¶ 4(c)(1) and 12(b)

of the Compact to pay the State Contribution on the same terms and conditions as in effect immediately prior to the renewal (25% of net drop of each category of Gaming Device for which exclusivity exists payable on a quarterly basis)." *Id.*, Disposition ¶ (1)-(3). Further, the Panel declared that "[t]his decision is a PARTIAL FINAL AWARD ON LIABILITY as to all claims and counterclaims submitted in this arbitration. This Award is final as to liability only." Partial Final Award, Disposition ¶ (1). Accordingly, the Panel ordered the Nation "to specifically perform its obligation under ¶¶ 4(c)(1) and 12(b) by paying the State Contribution currently owed to the State, including all past due payments, and by making all future payments in accordance with the Compact." *Id.*, Disposition ¶ (4).

The only question left open by the Partial Final Award was the dollar amount of the past due State Contribution payments—the "remedy," which the Parties agreed to bifurcate—as to which the Panel ordered the Parties to "meet and confer with respect to proposed terms of a remedial order and provide a joint report to the Panel . . . ." *Id.*, Disposition ¶ (5). In this regard, the Panel "reserve[d] jurisdiction to issue a later final award on the remaining issues," *i.e.*, to enter a subsequent award on the amount of damages in the form of State Contribution payments due and owing. *Id.*, Disposition ¶ (9).

## V.   THE PANEL ISSUES A SUBSEQUENT FINAL AWARD ON REMEDIES

The Parties met and conferred regarding a remedial order, and on February 26, 2019, jointly advised the Panel that they had "met and conferred on that dollar figure and ha[d] agreed . . . that 25% of the Net Drop (money dropped into the machines, after payout but before expense)" due by the Nation to the State for the period January 1, 2017 – December 31, 2018 amounted to $255,877,747.44. State Ex. F (email from Carol E. Heckman to the Panel and

Others dated February 26, 2019); *see also* Corrected Final Award ¶ 4. The Parties also advised the Panel that "[i]f the Panel wishes to receive proposed language for the *dispositif* of a final award, the Parties will provide the same jointly or separately." State Ex. F. On February 28, 2019, the Panel requested that the Parties "confer and send an agreed upon final award" for its signature. State Ex. G (email from Jeffrey Zaino at AAA on behalf of the Panel to the Parties, dated February 28, 2019).

On March 15, 2019, counsel for the Nation, on behalf of both Parties, advised the Panel that "the parties have met and agreed on the attached terms for a Final Award" and attached a "Draft Final Award". State Ex. H at 1 (email from Carol E. Heckman to the Panel and others, dated March 15, 2019 and attaching a Draft Final Award). On April 8, 2019, the Panel issued a Final Award. Due to certain clerical errors in the draft submitted by the Parties, the Parties submitted a "Draft Corrected Final Award" to the Panel on April 11, 2019. State Ex. I at 1 (email from Damien Nyer to the Panel and others dated April 11, 2019 attaching the Corrected Draft Final Award and a redline comparison).

On April 12, 2019, the Panel issued the Corrected Final Award, which adopted the Draft Corrected Final Award jointly submitted by the Parties. Nation Ex. A. In accordance with the Compact and the Parties' submission regarding past due payments, the Corrected Final Award directed that the Nation pay to the State $255,877,747.44 – the State Contribution amount outstanding from January 1, 2017 to December 31, 2018. *Id.*, Disposition ¶ (iii). The Corrected Final Award also reiterated that "the Nation is obliged under ¶¶ 4(c)(1) and 12(b) of the Compact to continue to pay the State Contribution during the Compact renewal period at a rate of 25% of Net Drop of each category of Gaming Device for which exclusivity exists payable on a quarterly

basis," and that "the Nation is to specifically perform its obligation under ¶¶ 4(c)(1) and 12(b) by paying the State Contribution currently owed to the State, including all past due payments, and by making all future payments in accordance with the Compact." Corrected Final Award, Disposition ¶ (i)-(ii).

The Compact provides that the arbitral awards rendered under it (such as the Awards) "shall be final, binding and non-appealable." Compact ¶ 14(i). The Compact further provides that "[f]ailure to comply with the arbitration award within the time specified therein for compliance, or should a time not be specified, then forty-five (45) days from the date on which the arbitration award is rendered, shall be deemed a breach of the Compact." *Id.* The Contract gives this Court exclusive jurisdiction to enforce any arbitration awards. Compact ¶ 14(i) ("The prevailing party in an arbitration proceeding may bring an action solely and exclusively in the U.S. District Court for the Western District of New York to enforce the arbitration award."). Finally, the Compact provides that the Nation waived any sovereign immunity defense to enforcement of arbitral awards. Compact ¶ 14(i) ("[T]he Parties agree to waive their sovereign immunity solely and exclusively for the strictly limited purpose of such an enforcement action in such court and for no other purposes."). The Nation does not dispute that it waived any sovereign immunity defense to enforcement of the Awards.

## LEGAL STANDARD

It is well established that "[t]he FAA creates a 'strong presumption in favor of enforcing arbitration awards' and courts have an 'extremely limited' role in reviewing such awards." *Landau v. Eisenberg*, 922 F.3d 495, 498 (2d Cir. 2019) (per curiam) (quoting *Wall Street Assocs., L.P. v. Becker Paribas Inc.*, 27 F.3d 845, 849 (2d Cir. 1994)); *see also Rich v. Spartis*,

516 F.3d 75, 81 (2d Cir. 2008) ("[A]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."). Accordingly, "[t]he arbitrator's rationale for an award need not be explained," and "[o]nly a barely colorable justification for the outcome reached" is necessary to confirm the award. *Id.* at 81 (quoting *Landy Michaels Realty Corp. v. Local 32-B-32J, Serv. Employees Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)).

The burden of proof to vacate an arbitration award is on the moving party, "and the showing required to avoid confirmation is very high." *Id.* (citing *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997)). The moving party must establish that one of the statutory grounds in 9 U.S.C. § 10 warrants vacatur of the award. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008).

Here, the Nation only challenges the Awards on the basis of "manifest disregard of the law." A party seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden, and courts have recognized that an "award should be enforced, despite a court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached." *Fid. Brokerage Servs. LLC v. Deutsch*, 763 F. App'x 104, 105 (2d Cir. 2019) (emphasis in original). Under this standard, an award is subject to vacatur only if the legal provision at issue was (1) clearly applicable to the matter at hand, (2) known to the arbitrators, and (3) <u>intentionally</u> misapplied. *Id.* (emphasis added). Thus, errors of law and/or fact by the arbitrator are not sufficient. *T.Co Metals, LLC v. Dempsey Pipe & Supply*, 592 F.3d 329, 339 (2d Cir. 2010). Of special relevance here, this standard essentially bars review of whether an arbitrator misconstrues a contract. *Id.*; *Unite Here Local 100 v. Westchester Hills Golf Club,*

*Inc.*, 161 F. Supp. 3d 262, 265 (S.D.N.Y. 2016) ("An arbitrator's 'factual findings and contractual interpretation are not subject to judicial challenge.'"); *see also Stemcor USA, Inc. v. Miracero, S.A. de C.V.*, No. 14-CV-0921 (LAK) (RLE), 2014 U.S. Dist. LEXIS 118504, at *24 (S.D.N.Y. Aug. 22, 2014) ("[B]ecause the panel's contractual interpretations are not subject to judicial challenge, the Court finds no manifest disregard of law.").

## ARGUMENT

I.      **THE PETITION'S CHALLENGE TO THE PARTIAL FINAL AWARD ON LIABILITY IS TIME BARRED**

The Nation's Petition is time barred.  The FAA provides for a three-month statute of limitations period for any actions seeking to vacate an arbitration award.  9 U.S.C. § 12 ("Notice of a motion to vacate, modify, or correct an award <u>must</u> be served upon the adverse party or his attorney <u>within three months after the award is filed or delivered</u>.") (emphasis added).  The three-month time limit is strictly enforced and commences when the parties first receive the arbitral award.  *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984) ("No exception to th[e] three month limitations period is mentioned in the statute.  . . . Further, there is no common law exception to the three month limitations period on [a] motion to vacate."); *Hatemi v. M & T Bank Corp.*, No. 13-CV-1103S, 2017 U.S. Dist. LEXIS 170017 (W.D.N.Y. Oct. 12, 2017) ("The 90-day clock is strictly observed.").  It is well established that a party cannot seek to vacate or modify an arbitration award after the three months period has run, whether in a petition to vacate or as a defense to a motion to confirm.  *See Florasynth*, 750 F.2d at 175 ("No exception to this three month limitations period is mentioned in the statute.  Thus, under its terms, a party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period has run, even when raised as a defense to a motion to confirm."); *see also Wells Fargo Advisors v.*

*Mercer*, No. 14 Civ. 9279 (ER), 2016 U.S. Dist. LEXIS 2407, at *12 (S.D.N.Y. Jan. 8, 2016) ("Even if the [c]ourt were to construe [r]espondent's defenses and counterclaims as a proper cross motion to vacate or modify, [r]espondent's motion would nonetheless be time barred."), *aff'd*, 735 F. App'x 23, 24 (2d Cir. 2018).

The Partial Final Award is a "final" award that is subject to confirmation and vactur under the FAA within the time limits set by the FAA. *See, e.g.*, *Trade & Transport, Inc. v. Nat. Petroleum Charterers, Inc.*, 931 F.2d 191, 195 (2d Cir. 1991) (where parties agreed to bifurcate the decision "and asked the panel to decide the issue of liability immediately," a "partial final award" on liability "was thus final"); *see also McGregor Van De Moere, Inc. v. Paychex, Inc.*, 927 F. Supp. 616, 618 (W.D.N.Y. 1996); *Glob. Gold Mining LLC v. Caldera Res., Inc.*, 941 F. Supp. 2d 374 (S.D.N.Y. 2013).

Here, the Partial Final Award was issued and received by the parties on January 7, 2019, and therefore the time for the Nation to move to vacate this award addressing issues of liability expired three months later on April 7, 2019. Accordingly, the Petition is time-barred because it was filed on June 6, 2019, more than three months after the Partial Final Award was issued and received by the parties on January 7, 2019.

The Nation cannot avoid the applicable statute of limitations by framing its Petition as seeking to vacate only the Corrected Final Award. It is clear that the Petition is nothing more than an impermissible collateral attack on the Partial Final Award and the Panel's determination of liability made therein. The Petition does not specifically contest the Corrected Final Award, which is a purely remedial order setting out the quantum of past due State Contribution payments and the terms of which were agreed by the Parties and jointly provided to the Panel. Instead,

virtually all of the Nation's arguments in support of the Petition take issue with the Panel's determination in the Partial Final Award that the Compact requires the Nation to continue to pay the State Contribution during the Renewal Period and that the Nation is in breach of its obligation. *See* Mem. at 9-24. Indeed, and as further discussed below, the Nation's only basis for vacatur—that the Panel's determination the Nation is obliged to pay the State Contribution during the Renewal Period contravened "IGRA's Secretarial review requirement"—is squarely directed at the Partial Final Award, which considered and rejected that very argument.

Nor can there be any real dispute that the Panel finally determined the issues of liability in the Partial Final Award. The Partial Final Award states that the Panel's "decision is a PARTIAL FINAL AWARD ON LIABILITY as to all claims and counterclaims submitted in this arbitration." Partial Final Award at 55. The Corrected Final Award also makes clear that the Panel had already resolved the liability issue in the Partial Final Award, referring to the Panel's prior decision in the "Partial Final Award on Liability." Corrected Final Award ¶ 1. The Nation itself acknowledges this, describing the Corrected Final Award as merely "reiterating" the Panel's conclusions on liability contained in the Partial Final Award. Mem. at 1.

## II. IN ANY EVENT, THE PETITION DOES NOT ESTABLISH ANY VALID GROUND TO VACATE THE AWARDS

Vacatur is a severe remedy, and it is well established that the Nation bears a "heavy burden" to demonstrate a basis for vacatur under the FAA. *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) ("A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law."). There is also a strong public policy favoring arbitration and discouraging judicial interference with arbitration awards. *See*

*Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108, 10 (2d Cir. 1980) (observing that "judicial intervention into the arbitral process is precisely what the narrowly defined provisions of sections 10 and 11 were designed to prevent"); *NFL Mgmt. Council v. NFL Players Ass'n*, 820 F.3d 527, 537 (2d Cir. 2016) ("If the arbitrator acts within the scope of [his or her] authority, the remedy for a dissatisfied party 'is not judicial intervention,' but 'for the parties to draft their agreement to reflect the scope of power they would like their arbitrator to exercise.'").

The Nation asserts that vacatur is warranted because the Final Award was issued in manifest disregard of federal law. Specifically, the Nation argues that the Final Award should be vacated because it was issued in "manifest disregard" of the alleged requirement under IGRA for Secretarial review of the Final Award as an amendment to the Compact.[3]

In this Circuit, "awards are vacated on grounds of manifest disregard only in 'those exceedingly rare instances where some <u>egregious impropriety on the part of the arbitrator is apparent.</u>'" *T.Co Metals*, 592 F.3d at 339. The standard for establishing manifest disregard of the law is exacting, and requires much more than just errors of law and/or fact. The standard requires "a showing that the arbitrators knew of the relevant [legal] principle, <u>appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it.</u>" *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 452 (2d Cir. 2011) (emphasis added); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d

---

[3] The Nation is barred from directly challenging the Panel's interpretation of the Compact under a "manifest disregard of the law" standard. *T.Co Metals*, 592 F.3d at 339 ("With respect to contract interpretation, this [manifest disregard] standard essentially bars review of whether an arbitrator misconstrues a contract."); *see also Unite Here Local 100*, 161 F. Supp. 3d at 265 ("An arbitrator's 'factual findings and contractual interpretation are not subject to judicial challenge.'").

930, 934 (2d Cir. 1986) ("The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable. We are not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it."). The Nation has failed to meet these exacting standards, and its Petition should be denied.

First, the Panel unquestionably had jurisdiction to decide the contractual interpretation dispute that the Parties willingly submitted to it, and nothing in IGRA divested the Panel of that jurisdiction. The Parties were free to agree to submit their dispute to binding arbitration, which they did pursuant to the express arbitration provision in the Compact. *See, e.g.*, *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960) ("Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances, the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for."). There is nothing in the Parties' agreement that refers disputes regarding the terms of the Compact to the Secretary. To the contrary, the Compact expressly provides that the Parties agree to submit "any dispute . . . or disagreement arising from or relating to this Compact" to binding arbitration. Compact ¶ 14(c). The Parties further agreed that any resulting arbitral award was to be enforced by this very Court. Compact ¶ 14(i).

The Nation nonetheless argues that, by resolving the Parties' contractual interpretation dispute, the Panel added a new term to the Compact and thereby "usurped" the Secretary's right to review and approve amendments to compacts. Mem. at 12. In making this argument, the Nation relies on Section 2710(d)(3)(B) of IGRA which provides that a "compact shall take effect

only when notice of approval by the Secretary of such compact has been published by the Secretary in the Federal Register." *See* 25 U.S.C. § 2710(d)(3)(B). The Nation also invokes several IGRA regulations from the Federal Register, which generally reiterate the statutory delegation of compact and amendment approval to the Secretary. Mem. at 11 (citing 25 C.F.R. § 293.4(a) (IGRA "[c]ompacts are subject to review and approval by the Secretary"); *id.* § 293.4(b) (same for amendments); *id.* § 293.3).

However, this provision of IGRA and associated regulations are of no assistance to the Nation because, in resolving the contract interpretation dispute that the Parties had willingly submitted to it, the Panel did not amend (and did not purport to amend) the Compact. The relevant issue that the Parties agreed to submit to the Panel was whether the Compact, according to its terms and standard cannons of contract interpretation, obliges the Nation to pay the State Contribution during the Renewal Period. *See* Partial Final Award at 42. The Parties did not invite the Panel to "amend" the Compact, and, in ruling on this contract dispute and issuing the Awards, the Panel did not create a new compact or impose a new amendment to the existing Compact. Nor do any of the statutes and regulations the Nation cites suggest otherwise. Unsurprisingly, the Nation does not cite to a single authority that equates an arbitration panel's interpretation of a compact with an amendment to such compact necessitating the Secretary's approval under IGRA. There is simply no requirement or basis to treat arbitral awards like new compacts or amendments to an existing compact.[4]

---

[4] Indeed, the Nation's argument would stand contract law on its head: Any party that had an arbitral decision involving a disputed contract term go against it could simply characterize the decision as imposing a new contract term to which the party did not agree to be bound. Likewise, applying the Nation's logic, any time an arbitral panel or a court issued a decision

Second, the Panel did not misapply, much less "willfully flout", any controlling law. To the contrary, the Panel considered and rejected all the same IGRA-based arguments that the Nation raises in the Petition. Just as in the Petition, the Nation argued to the Panel that the "the State [was] asking th[e] Panel to . . . usurp [the Secretary's right to review compacts] and bless a Compact term that the Secretary never considered and clearly did not bless." Mem. at 12. And, just as in the Petition, the Nation did not provide the Panel any legal authority for the proposition that the Panel's resolution of the Parties' contractual interpretation dispute would be tantamount to amending the Compact under IGRA (or any other law). The Nation cannot now accuse the arbitrators of having "manifestly disregarded" a law that it did not articulate. *See Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004) (""[A]n arbitrator 'under the test of manifest disregard is ordinarily assumed to be a blank slate unless educated by in the law by the parties.'"); *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 808 F.2d at 934 ("We are not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it.").

The Panel recognized that, while it had "no legal authority to usurp the Secretary's role and enforce a Compact term that the Secretary did not approve," it had "the duty and authority to determine whether the terms of the Compact already provide for revenue sharing payments upon renewal." Partial Final Award at 42. The Panel thus clearly recognized its authority and role in enforcing and interpreting the terms of the Compact, and did not "willfully flout" any applicable law.

interpreting the terms of a contract, it would constitute an amendment to that contract or an entirely new contract. These obviously absurd results are totally inconsistent with how contracts are enforced.

Third, the Panel's Partial Final Award is a well-reasoned decision amply supported by applicable law. The Panel considered all of the Parties' relevant arguments and, applying common tools of contract interpretation supported by New York law, issued a 56-page decision with a well-reasoned conclusion that the Nation's obligation to pay the State Contribution in exchange for the bargained-for exclusivity continued during the Renewal Period. *See* Partial Final Award at 24-54. For its part, the Corrected Final Award is a purely remedial order that adopted the calculation of past due State Contribution payments, which the Parties jointly agreed to and provided to the Panel. Accordingly, the Partial Final Award and Corrected Final Award are supported by far more than a "barely colorable" basis. On that basis alone the Nation's "manifest disregard" challenge should be rejected and the Awards confirmed.

## III. THE PRIMARY JURISDICTION DOCTRINE DOES NOT DEPRIVE THIS COURT OF ITS JURISDICTION TO ENFORCE THE AWARDS

In the alternative, the Nation urges this Court to stay this proceeding under the primary jurisdiction doctrine and refer the dispute to the DOI. This argument is without merit.

First, as discussed above, the Parties expressly agreed in the Compact to arbitrate their dispute. The Parties also agreed that the State could enforce any resulting arbitral award against the Nation in this Court. These binding arbitration and enforcement provisions were clearly laid out in the Compact when it was approved by the Secretary. The Nation is essentially asking this Court to disregard and overrule the Parties' arbitration agreement and flout the FAA because the Nation does not like the results of the arbitration. This is contrary to well-established law and public policy in favor of enforcing arbitral awards. *See, e.g.*, *NFL Players Ass'n*, 820 F.3d at 536 ("Because it is the arbitrator's view of the facts and the meaning of the contract for which the parties bargained, courts are not permitted to substitute their own. It is the

arbitrator's construction of the contract and assessment of the facts that are dispositive, 'however good, bad, or ugly.'").

Second, and in any event, the primary jurisdiction doctrine does not apply here. The doctrine is concerned with "promoting proper relationships between courts and administrative agencies charged with particular regulatory duties" and the doctrine is not implicated unless a question is "within the special competence of an administrative body." *Ellis v. Tribune TV Co.*, 443 F.3d 71, 81-82 (2d Cir. 2006). Courts generally consider four factors: (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made. *Id.* The doctrine is not implicated here, and none of these factors weigh in favor of abstention.

The Nation provides no authority for the proposition that the DOI "possesses 'special competence' to advise the Court as to the scope of its Compact approval." Mem. at 25. More to the point, the Secretary already exercised the DOI's "special competence" when it approved the Compact and noticed it in the Federal Register. *See* Mem. at 7 ("The Compact took effect on December 9, 2002, see 67 Fed. Reg. 72,968."). The Parties' dispute revolved around the interpretation of the approved Compact (and, in particular, its renewal provisions), not whether the Compact was in fact approved in the first place. *See N.Y. State Thruway Auth. v. Level 3 Commc'ns, LLC*, 734 F. Supp. 2d 257, 265 (N.D.N.Y. 2010) ("Contract disputes are legal questions within the conventional competence of the courts and thus the doctrine of primary

jurisdiction does not normally apply."); *New York v. Oneida Indian Nation*, 78 F. Supp. 2d 49, 58 (N.D.N.Y. 1999) ("[D]eferral to the [National Indian Gaming Commission] is not warranted. . . . [T]he question here is simply whether the Nation has violated the [IGRA] Compact. . . . The Compact, moreover, does not include novel words or unusual language that may need specialized understanding."). The appointed arbitral Panel—chaired by a former federal judge— was fully capable of resolving that contractual interpretation dispute in accordance with the Parties' arbitration agreement. And this Court is similarly positioned to exercise its proper jurisdiction and competence in enforcing the Awards.

Nor has the Nation identified any legal authority (or anything in the Parties' agreement) that assigns to the DOI the exclusive authority to resolve the parties' underlying contractual interpretation dispute, much less enforcement of the Awards. *See, e.g.*, *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 58-59 (2d Cir. 1994) ("The threshold issue in determining whether [the primary jurisdiction] doctrine applies is whether both the court and an agency have jurisdiction over the same issue."). To the contrary, the DOI approved the Parties' agreement in the Compact to submit their dispute to arbitration and have this Court enforce the Awards. Even if the DOI could potentially "extend [its] express jurisdiction over the formation of contracts to adjudication of breach of contract disputes," it would still not be proper for the Panel or Court to abstain from resolving an issue of contract interpretation. *Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 97 (2d Cir. 1996) ("Even if [the agency] could exercise proper jurisdiction over this case, however, we would nevertheless find the primary jurisdiction doctrine inappropriate because the issues of contract interpretation here are neither beyond the conventional expertise of judges nor within the special competence of the [the

agency].").

There is also no conflict between (i) the Secretary's authority to approve IGRA-governed compacts and amendments to such compacts, (ii) the Panel's authority to resolve the Parties' contractual dispute pursuant to their arbitration agreement, and (iii) this Court's authority and obligation under the FAA to confirm the Awards consistent with the Parties' agreement. Arbitral awards resolving contract-law disputes arising under approved IGRA compacts do not amend or add terms to the compacts, they settle the parties' disputes as to proper interpretation of specific terms within the compacts.

Third, federal courts are required to exercise their jurisdiction, and where, as here, the Court clearly has jurisdiction to enforce the Awards pursuant to the FAA and the Compact, it is required to exercise such jurisdiction. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them"); 9 U.S.C. § 9 ("If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then . . . [upon application] the court must grant [a confirmation] order unless the award is vacated."). This is particularly the case here, where the Parties agreed this Court would have exclusive jurisdiction to enforce the Awards. Compact ¶ 14(i) ("The prevailing party in an arbitration proceeding may bring an action solely and exclusively in the U.S. District Court for the Western District of New York to enforce the arbitration award.").

Fourth, the DOI has already made clear it defers to the Parties' agreed-to arbitration forum. After the Parties submitted their dispute to binding arbitration, the DOI expressly

deferred to the arbitration process and made clear that it does not consider itself competent to issue any decision with respect to the Parties' contract-law dispute. *See* Mem. at 13; Nation Ex. J at 1.[5]  The DOI also more recently rejected the Nation's effort to submit the Awards for review and approval by the DOI as an "amendment" to the Compact.[6]  Mem. at 25; Nation Ex. O at 1. Particularly where the DOI has clearly deferred to the Parties' agreed-to arbitration, the primary jurisdiction doctrine does not apply. *Fulton Cogeneration Assocs.*, 84 F.3d at 97.

## IV.    THE AWARDS SHOULD BE CONFIRMED

Both of the Awards should be confirmed.   Under the FAA, an arbitral award must be confirmed where, as here, the high bar to vacate or modify the award has not been met. *See* 9 U.S.C. § 9 ("[A]ny party to the arbitration may apply . . . for an order confirming the award, and

---

[5] The Nation makes much of the DOI's Technical Assistance Letter of January 19, 2017 (the "TA Letter"), in which the Secretary (responding to a letter from the Nation that was not included as an exhibit to the Petition and which the State has never seen), stated that, in the DOI's view, "the Nation's 14-year revenue sharing obligation granted the Nation 21 years of exclusivity."  Mem. at 8-9; Nation Ex. F at 2.  The Nation's reliance on the TA Letter (which was not put before the Panel and was not part of the record of the arbitration and the existence of which the State was unaware until the Petition) is misplaced.  On its face, the TA Letter was not "to be construed as [] a preliminary decision or advisory opinion regarding compacts that are not formally submitted to this Office for review and approval." *Id.* at 1.   Furthermore, the DOI withdrew the letter in December 2017 after the Parties agreed to submit their dispute to arbitration under the terms of the Compact.  The DOI properly deferred to the arbitration process "to resolve [the Parties'] differences regarding interpretation of certain provisions in the [Compact]," and acknowledged that the TA Letter "did not provide the certainty available to the parties in arbitration proceedings."  Nation Ex. J.

[6] The Nation mischaracterizes the response from the DOI when it asserts that "the Department has invited the Parties to submit the question to it in the form of a properly certified Compact Amendment."  Mem. at 25 (citing Nation Ex. O at 1).  To the contrary, the DOI rejected the Nation's submission as not complying with applicable regulations and made clear that the DOI "take[s] no position on th[e] question" of whether "the Arbitration Award effectively amended [Compact] that was approved by operation of law in 2002."  Nation Ex. O at n.1.

thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."); *Landau*, 922 F.3d at 498 ("The FAA creates 'a strong presumption in favor of enforcing arbitration awards' and courts have an 'extremely limited' role in reviewing such awards."); *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*, 863 F.3d 96, 118 n.18 (2d Cir. 2017) ("In FAA practice, an order 'confirming' an arbitral award must be issued upon timely application of any party to the arbitration and upon prior notice served upon the adverse party unless the award is vacated, modified, or corrected as provided for by the Act.").

As set forth above, the Nation has not met its heavy burden of showing that vacatur of the Awards is warranted. Nor is there any basis to defer confirmation of the Awards. "On application for an order confirming the arbitration award, the court 'must grant' the order 'unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 [of the FAA]." *Hall St. Assocs., L.L.C.*, 552 U.S. at 587 (noting that the "provision for judicial confirmation carries no hint of flexibility"). Here there is no basis to vacate the Awards, and the Court should confirm the Awards under 9 U.S.C. § 9 and enter a judgment in the State's favor.

## V.    THE COURT SHOULD AWARD COSTS TO THE STATE

This Court should award attorneys' fees and costs to the State under the Court's inherent equitable powers.

> "As applied to suits for the confirmation and enforcement of arbitration awards, . . . when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded."

*Celsus Shipholding Corp. v. Pt. Pelayaran Kanaka Dwimitra Manunggal*, No. 06 Civ. 13598 (DLC), 2008 U.S. Dist. LEXIS 12842, at *2 (S.D.N.Y. Feb. 21, 2008) (quoting *Int'l Chem.*

*Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985)) (internal citations omitted).

The circumstances here warrant a grant of fees and costs. <u>First</u>, the Petition is clearly part of a delay strategy. Courts have recognized that appropriate sanctions in the form of attorneys' fees can be particularly appropriate in the context of a challenge to an arbitration award that appears to be primarily designed to delay the entry of a confirming judgment. *See N.Y. Hotel & Motel Trades Council v. Cf 43 Hotel, LLC*, No. 16 Civ. 5997 (RMB), 2017 U.S. Dist. LEXIS 91247, at \*14 (S.D.N.Y. June 14, 2017) ("Courts routinely award attorney's fees to a petitioner seeking to confirm an arbitration award where the respondent fails timely to move for vacatur or modification of the award . . . [and] appear[s] to have been motivated by a desire to forestall complying with the award."); *see also DigiTelCom, Ltd. v. Tele2 Sverige AB*, No. 12 Civ. 3082 (RJS), 2012 U.S. Dist. LEXIS 105896, at \*19 (S.D.N.Y. July 25, 2012) ("[S]anctions are peculiarly appropriate in the context of a challenge to an arbitration award which appears to be a largely dilatory effort."); *B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 913-14 (11th Cir. 2006) (suggesting that "[w]hen a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is broken" and that in such a case sanctions may be appropriate).

<u>Second</u>, the Nation has not offered any legitimate basis to vacate the Awards. *See Prospect Capital Corp. v. Enmon*, 08 Civ. 3721 (LBS), 2010 U.S. Dist. LEXIS 23477, at \*21 (S.D.N.Y. Mar. 9, 2010) ("The pursuit of frivolous claims has been found to establish bad faith . . . [and] [f]rivolous claims are particularly egregious when brought to frustrate arbitration."),

*aff'd*, 675 F.3d 138 (2d Cir. 2012).  As discussed in Part II, *supra*, the Nation has cited no legal support for its key contention—that by engaging in contractual interpretation the Panel in fact "amended" the Compact—and has, essentially, "merely identif[ied] the standard for vacating an arbitration award at the outset of their papers and then proceed[ed] to attack the [Panel]'s findings."  *DigiTelCom*, 2012 U.S. Dist. LEXIS 105896, at *20.  The award of fees is warranted in such circumstances.

## **CONCLUSION**

In light of the foregoing, the Court should deny the Petition, grant the Cross-Petition and confirm the Awards, award reasonable attorneys' fees and costs to the State, and grant such other relief as it deems just and proper.

Dated: July 12, 2019                                Respectfully submitted,

                                                */s/ Gregory M. Starner*
                                                Gregory M. Starner
                                                Matthew L. Nicholson
                                                Lauri Kai
                                                WHITE & CASE LLP
                                                1221 Avenue of the Americas
                                                New York, NY 10020
                                                (212) 819-8200
                                                gstarner@whitecase.com
                                                matthew.nicholson@whitecase.com
                                                lauri.kai@whitecase.com

                                                *Attorneys for the State of New York*

AMERICAS 100112069