UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SENECA NATION OF INDIANS,

    Petitioner,

v.

STATE OF NEW YORK,

    Respondent.

Index No. 1:19-cv-00735-WMS

---

### AFFIDAVIT OF CHERYL A. WATTS IN SUPPORT OF THE SENECA NATION OF INDIANS' MOTION TO STAY JUDGMENT PENDING APPEAL

Cheryl A. Watts, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declares the following to be true and correct:

1. This affidavit is submitted in support of the Seneca Nation of Indians' (the "Nation") motion to stay judgment pending appeal in the above-captioned case. It is based on my personal knowledge as the Comptroller of the Nation, a position I have held since November 2, 2009.

2. I am a Certified Public Accountant with an active license number 051293-1 issued by the State of New York, through July 31, 2021. Prior to taking the position of Comptroller for the Nation, I held the following positions:

    a. Director, Buffamante, Whipple, Buttafaro, LLC, Certified Public Accountants, located in Olean, New York;

    b. Director of Finance and Internal Audit, Pioneer Credit Recovery, Inc., located in Arcade, New York;

    c. Director of Audit, Seneca Nation of Indians;

1

  d. Partner, R. A. Mercer & Co., P. C., Certified Public Accountants, located in Cattaraugus, New York.

3. My duties as Comptroller for the Nation include:

  a. Oversight of all day-to-day financial and fiscal operations of the Nation in accordance with Nation policy and procedure under the direction of the Chief Financial Officer;

  b. Maintenance of accurate and complete financial records and timely reporting to the Nation's Council and Executives; and

  c. Direction of the Nation's Fiscal Department Offices with 33 employees (Accounting, Accounts Payable, Purchasing, Payroll and Grants Budget Office).

4. Seneca Gaming Corporation ("SGC") is a governmental instrumentality chartered under the laws of the Nation, wholly owned by the Nation, and authorized to conduct gaming activities on the Nation's behalf. On various occasions since gaming operations began in 2002, SGC has obtained loans and credit facilities to provide financing for capital improvements, working capital and general business purposes for the three casinos operated on behalf of the Nation. In connection with these loans and credit facilities, SGC and the Nation have consistently agreed to segregate funds whenever it appeared that such funds could be subject to a dispute with the State.

5. The most recent such financing occurred when SGC entered into an amended credit agreement on December 28, 2018, with Fifth Third Bank and certain other banks (the "Lenders"). In connection with the December 2018 credit agreement and consistent with previous practice, the Nation agreed to specifically deposit State Contributions that are the

subject of any dispute with the State into an earmarked third-party account to ensure that the funds are in place and adequate in amount in the event of an adverse judgment or settlement concerning State Contributions.

6. In 2018, SGC secured new financing for its operations. In connection with this financing, the Nation executed two ancillary agreements. First, the Nation executed a "Nation Agreement" by and between the Nation, SGC, and Fifth Third Bank. Second, the Nation executed a "Blocked Account Agreement" by and between the Nation, KeyBank National Association ("KeyBank"), and Fifth Third Bank (collectively the "Agreements").

7. Under the Nation Agreement, the Nation agreed to place all State Contributions in dispute between the Nation and the State (the "Disputed Amounts") in excess of $15 million into the segregated third-party account to be funded with cash and cash equivalents. The Nation also deposited those disputed amounts the Nation had already segregated prior to execution of the Agreements.

8. The Blocked Account Agreement established the third-party account by creating a securities account (as defined in Section 8-501(a) of the Uniform Commercial Code of the State of New York) held by KeyBank (the "Secured Account"). As the lead Lender, Fifth Third Bank acts as the secured party for the Secured Account and exercises control of it. No withdrawal can be made from the Secured Account by the Nation without the express written consent of Fifth Third Bank and only pursuant to specific withdrawal instructions. In addition, the Nation Agreement expressly requires the Nation to continue to make payments into the Secured Account in the full amount of the disputed State Contributions. The Nation has in fact made these payments on a monthly basis and will continue to make such monthly payments until this litigation concludes.

9. The Agreements were specifically designed and executed to ensure that the Nation would continue to have sufficient funds to satisfy any judgment it incurred in the litigation.

10. The Agreements both protect the SGC lenders' interest in guaranteeing that the Nation is able to satisfy any adverse judgment arising out of the dispute with the State in the above-captioned matter, and also function to provide full security for the State's interests in a potential judgment against the Nation.

11. Starting with the January 2017 State Contribution, the Nation has made monthly deposits into the Secured Account (and its predecessor account) in the amount of the disputed State Contributions, as set forth in **Exhibit A** attached hereto. Although the Nation was permitted to exempt $15,000,000 from these deposits pursuant to the Nation Agreement, it chose not to do so, instead depositing the entire amount of the disputed State Contributions.

12. The Final Award of the Arbitration Panel was for $255,877,747.44, reflecting the disputed State Contributions through December 2018. As reflected in **Exhibit A**, the Nation had already been making monthly deposits for the disputed State Contributions consistent with its obligations to SGC's lenders. Since that amount was determined in the Arbitration, the Nation has deposited an additional $109,041,712.92 into the Secured Account, reflecting disputed State Contributions for the following time periods: January 2019-March 2019: $30,875,282.07; April 2019-June 2019: $33,566,209.00; July 2019-September 2019: $33,973,614.98; and October 2019: $10,626,606.87.[1]

13. The funds currently in the Secured Account are more than sufficient to provide full security to the State pending the appeal to the Second Circuit. The Nation is in possession of

---

[1] The October payment amount only reflects payment for the month, and obviously does not yet include potential payments for the balance of the fourth quarter.

4

a letter from KeyBank verifying that the current balance of the Secured Account as of November 30, 2019 is $372,368,656.

I declare under penalty of perjury that foregoing is true and correct.

**Executed on:** December 3, 2019

*Cheryl A. Watts*
Cheryl A. Watts

Sworn and Scribed before me this 3rd day of December 2019

Notary *Brenda Redeye*

Seal:

> BRENDA REDEYE
> NOTARY PUBLIC, STATE OF NEW YORK
> Registration No. 01RE6359054
> Qualified in Cattaraugus County
> Commission Expires May 22, 2021

5

8335748_1