**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

SENECA NATION OF INDIANS,

                         Petitioner,

     v.                                              Index No. 19-cv-00735-WMS

STATE OF NEW YORK,

                         Respondent.

_____

**SENECA NATION'S MEMORANDUM OF LAW**
**IN SUPPORT OF RULE 60(b)**
**MOTION FOR RELIEF FROM JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 3

I.   Statutory Framework ................................................................................................. 3

II.  Procedural History ................................................................................................... 4

    A.   The Arbitration Proceedings ............................................................................. 4

    B.   Litigation of the Dispute .................................................................................... 5

III. The Interior Department Letter ................................................................................ 6

ARGUMENT ...................................................................................................................... 7

I.   The Rule 60(b)(6) Standard ...................................................................................... 7

II.  The Circumstances of this Case are Extraordinary .................................................. 8

III. The Judgment May Work an Extreme and Undue Hardship
    Absent the Nation's Requested Relief .................................................................... 13

IV.  The State Will Suffer No Harm if the Court Stays Enforcement
    of the Judgment ....................................................................................................... 17

V.   The Issuance of the Appellate Mandate Does Not Foreclose the
    Nation's Requested Relief ...................................................................................... 19

CONCLUSION .................................................................................................................. 22

i

## TABLE OF AUTHORITIES

**Cases**

*City of Duluth v. Fond du Lac Band of Lake Superior Chippewa,*
785 F.3d 1207 (8th Cir. 2015) ...............................................................11, 14

*City of Duluth v. Fond du Lac Band of Lake Superior Chippewa,*
No. 09-CV-2668 SRN/LIB (D. Minn. July 28, 2015), 2015 WL 4545302 ..................................12

*Citizens Against Casino Gambling in Erie Cty. v. Hogen,* No.
07-CV-0451S (W.D.N.Y. Aug. 26, 2008), 2008 WL 4057101 ...............................15

*DeWeerth v. Baldinger,* 38 F.3d 1266 (2d Cir. 1994)....................................................20

*Matarese v. LeFevre,* 801 F.2d 98 (2d Cir. 1986) ........................................................7

*Rincon Band of Luiseno Mission Indians of Rincon Rsrv. v.
Schwarzenegger,* 602 F.3d 1019 (9th Cir. 2010) ...........................3

*Seneca Nation of Indians v. New York,* 420 F. Supp. 3d 89
(W.D.N.Y. 2019) ........................................................................................5, 21

*Seneca Nation of Indians v. New York,* No. 19-CV-735S
(W.D.N.Y. Dec. 12, 2019), 2019 WL 6768779......................................18

*Seneca Nation of Indians v. New York,* 988 F.3d 618 (2d Cir. 2021)................................6, 19, 21

*Standard Oil Co. of California v. United States,* 429 U.S. 17 (1976) ...........................19

*Stevens v. Miller,* 676 F.3d 62 (2d Cir. 2012)..............................................................7

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.,* 592 F.3d 329
(2d Cir. 2010)................................................................................................5

*United Airlines, Inc. v. Brien,* 588 F.3d 158 (2d Cir. 2009) ...........................1, 7, 10, 13

**Statutes and Regulations**

25 U.S.C. § 2701...................................................................................................1

25 U.S.C. § 2702.................................................................................................3, 8

25 U.S.C. § 2702(2) .............................................................................................12

25 U.S.C. §§ 2705-06 ...........................................................................................11

25 U.S.C. § 2710(d)(4) ...........................................................................................3, 4, 14

25 U.S.C. § 2710(d)(3)(B) ...............................................................................................4

25 U.S.C. § 2710(d)(8)(C) .........................................................................................2, 17

25 U.S.C. § 2710(d)(8)(A) ...............................................................................................3

25 U.S.C. § 2713(a)(3) ...................................................................................................15

25 U.S.C. § 2713(b)(1) ...................................................................................................14

25 U.S.C. § 2713(b)(2) ...................................................................................................14

25 C.F.R. Part 571 ..........................................................................................................14

25 C.F.R. Part 573 ..........................................................................................................11

25 C.F.R. § 573.2 ............................................................................................................14

25 C.F.R. § 573.3 ............................................................................................................14

25 C.F.R. § 573.4 ......................................................................................................14, 15

**Other Legislative Materials**

S. Rep. No. 100-446 (1988) ....................................................................................3, 12, 16

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 60(b)(6), the Seneca Nation of Indians ("Nation") respectfully moves this Court for relief from its November 8, 2019 final judgment. Rule 60(b)(6) permits a court to grant relief from a judgment for "any … reason that justifies [such] relief."  Fed. R. Civ. P. 60(b)(6).  It is "properly invoked [1] where there are extraordinary circumstances … or [2] where the judgment may work an extreme and undue hardship" on the movant.  *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009).  Both of those bases are met here.  The Nation has been ordered by an arbitration panel to make renewal period payments (amounting to hundreds of millions of dollars) to the State of New York ("State") under a class III tribal-state gaming compact entered pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.* ("IGRA").  On April 15, 2021, the United States Department of the Interior issued a letter stating that it has not reviewed and approved such payments as required by the statute, and accordingly "caution[ed] the parties about their reliance on the [payment] terms because we have not determined that they are lawful."  Exhibit A to Declaration of Lee M. Redeye in Support of Rule 60(b)(6) Motion ("Redeye Decl."), p. 3.

These are extraordinary circumstances.  The arbitration panel acknowledged that it had no authority to "enforce a Compact term that the Secretary did not approve."  Dkt. No. 2-4 at 42. It *inferred* such approval because "renewal was part of the Compact that was reviewed and deemed approved" by the Secretary in 2002.  *Id.*  This Court held that relying on that inference was not in "manifest disregard" of the statute and the Court of Appeals affirmed.

The Department has now made clear that it never supplied the requisite approval.  It has further made clear that such approval is not a ministerial task, but rather involves detailed consideration as to whether the State is providing the Nation with "meaningful concessions" and

"substantial economic benefits" sufficient to justify the level of revenue-sharing payments.  It has explained that "[i]n 2002, the Secretary analyzed the revenue sharing payments for the initial 14 year term of the Compact….   The Secretary did not review or otherwise analyze any revenue sharing payments for the seven-year renewal period of the Compact[.]"  Redeye Decl., Ex. A, p.2.  And it has therefore emphasized that "serious concerns" exist as to the lawfulness of the renewal period payments and has expressed a desire to review the payments to determine whether they satisfy governing federal standards as to their legality.  *Id*. at p. 2-3.

It is accordingly beyond doubt that the statutorily mandated review and approval of renewal period payments by the Department of the Interior has never occurred.  Enforcing the payments based on inferred approval simply cannot be squared with the express views of the authoritative agency, nor with the requirements of the governing statute and of the federal trust responsibilities to Indians on which those views are based.  Enforcement under these circumstances would not only be extraordinary but would impose extreme and undue hardship on the Nation, including by creating a significant risk of adverse action by the National Indian Gaming Commission ("NIGC").

The Nation has sought the State's cooperation in submitting the disputed payment terms to the Secretary of the Interior for review but the State has declined.  Redeye Decl. ¶¶ 9, 10.  If the State relents and Secretarial review is initiated, the appropriate course of action for this Court would be to stay enforcement of its November 8, 2019 final judgment until the Secretary conducts that review (which under IGRA is limited to a 45-day period beginning on the date of the parties' submission, 25 U.S.C. § 2710(d)(8)(C)).  But if the State continues to resist Secretarial review such that it cannot be obtained, the appropriate course of action would be for this Court to vacate its November 8, 2019 final judgment, rendering the payment obligation

2

imposed by the panel majority unenforceable under IGRA and leaving the parties to negotiate

new revenue-sharing terms for Secretarial review if they so desire.

## BACKGROUND

### I.      Statutory Framework

Congress enacted IGRA in part to "protect [class III] gaming as a means of generating

tribal revenue."  25 U.S.C. § 2702.  In so doing, Congress understood that "the compact

requirement skews the balance of power over gaming rights in favor of states by making tribes

dependent on state cooperation[.]"  *Rincon Band of Luiseno Mission Indians of Rincon Rsrv. v.*

*Schwarzenegger*, 602 F.3d 1019, 1027 (9th Cir. 2010).  Congress addressed that imbalance by

"setting boundaries to restrain aggression by powerful states[.]"  *Id*. (citing S. Rep. No. 100-446,

at 33).

Among those boundaries, Congress vested the Secretary of the Interior with exclusive

authority to review and approve compacts before their provisions may lawfully be enforced as

between the tribal and state parties.  25 U.S.C. § 2710(d)(8)(A).  When a compact includes

revenue sharing, the Secretary's responsibility to undertake that review is at its zenith.  IGRA

expressly prohibits states from imposing "any tax, fee, charge, or other assessment upon an

Indian tribe" for class III gaming activity, 25 U.S.C. § 2710(d)(4), and Secretarial review guards

against such transgressions.

To enforce this statutory scheme and the Congressional goals that underpin it, the

Secretary examines proposed revenue-sharing arrangements with "great scrutiny" to determine

"whether the state has offered meaningful concessions" in exchange for the share of tribal

gaming revenues, and "whether the value of the concessions provides substantial economic

benefits to the tribe proportional to the revenue sharing required[.]"[1]   These are meaningful

requirements, designed to ensure that the statutory balance is honored and that the United States

fulfills its trust responsibility to Indian tribes.[2]   The Secretary's assessment of those requirements

in each given case is accordingly exacting, because absent their satisfaction a revenue-sharing

arrangement under a class III gaming compact may not lawfully be implemented and enforced.

25 U.S.C. § 2710(d)(3)(B).

## II.   Procedural History

### A.   The Arbitration Proceedings

On January 7, 2019, an arbitration panel, convened under the auspices of the American

Arbitration Association, resolved a dispute between the Nation and the State regarding whether

their gaming compact requires payments during the Compact's renewal period.   A two-member

majority of the arbitration panel found in favor of the State and imposed what it termed a "Years

15-21" payment obligation on the Nation.   Dkt. No. 2-4 at 6.   The panel majority acknowledged

that the Compact "is silent regarding … Years 15-21 [payments]," and concluded that it was "in

fact ambiguous as to whether or not the Nation's obligation to share revenue ends after fourteen

years." *Id*. at 24.

---

[1] Aug. 17, 2010, Letter of Department to Habematolel Pomo Tribe at 3 (emphasis added), https://www.indianaffairs.gov/sites/bia.gov/files/assets/as-ia/oig/oig/pdf/idc1-024698.pdf. *See also, e.g.,* Letter of Dep't to Citizen Potawatomi Nation ("Letter to Potawatomi") at 2 (Jan. 6, 2006) (Revenue-sharing provisions are "*carefully scrutinized* …. because the IGRA does not authorize states to impose a tax … on Indian tribes to engage in class III gaming. *See* 25 U.S.C. § 2710(d)(4)") (emphasis added), https://www.indianaffairs.gov/sites/bia.gov/files/assets/as-ia/oig/oig/pdf/idc1-025692.pdf.

[2] *See, e.g.,* Nov. 21, 2001, Letter of Department to Pueblo of Santa Clara at 1, https://www.indianaffairs.gov/sites/bia_prod.opengov.ibmcloud.com/files/assets/as-ia/oig/oig/pdf/idc1-025720.pdf ("Department has a trust obligation to Indian tribes to ensure that the benefit received by the State . . . is appropriate in light of the benefit conferred on the tribe.").

The panel majority ultimately interpreted the Compact to impose the Years 15-21 payment obligation based on an array of non-textual factors, including its subjective notions of "common sense" and "commercial reasonableness," and extrinsic evidence of what it termed the parties' "essential bargain." *See id*. § III.D.  These factors informed the panel majority's view of the Compact's renewal provision.  From there, the panel majority inferred that IGRA's Secretarial review requirement was met because "renewal was part of the Compact that was reviewed and deemed approved." *Id*. at 42.  The panel majority made no finding that the Secretary in fact reviewed and approved the disputed payment obligation.

B.  <u>Litigation of the Dispute</u>

The Nation then petitioned this Court to vacate the panel majority's award as violative of IGRA's Secretarial review mandate.  The Court confirmed the panel's award under the "manifest disregard" standard of review.  *Seneca Nation of Indians v. New York*, 420 F. Supp. 3d 89, 104 (W.D.N.Y. 2019); *see, e.g., T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (requiring confirmation of arbitration award if there is a "barely colorable" basis for the award).  Under that standard, the Court held that the panel majority "simply construed the parties' existing, approved compact" as permitted under the Compact's arbitration clause. *Id.* at 104-05.  Like the arbitration panel, the Court made no finding that the Secretary was affirmatively made aware of, much less knowingly approved, the disputed "Years 15-21" payment obligation.

On appeal, the Second Circuit expressed "no view about whether the Secretary's position when the Compact was deemed approved was that it in fact required" the disputed Years 15-21 payments, instead upholding the panel majority's award because the panel's task "was a straightforward matter of contract interpretation[.]" *Seneca Nation of Indians v. New York*, 988

F.3d 618, 621 (2d Cir. 2021).  Thus, like the panel majority and the district court, the Court of

Appeals made no finding that the Secretary reviewed and approved a "Years 15-21" payment

obligation.

The Court of Appeals denied the Nation's petition for panel rehearing and en banc review

on April 9, 2021 and the mandate issued on April 16, 2021.  Dkt. No. 38.

## III.    The Interior Department Letter

On March 21, 2021, the Nation sought clarity from the Department of the Interior as to

whether complying with the arbitration award and making the disputed payments to the State

was permissible under IGRA.  Redeye Decl., Ex. E.

On April 15, 2021, the Department responded as follows:

In 2002, the Secretary analyzed the revenue sharing payments for the initial 14 year term
of the Compact and determined that they were consistent with IGRA.  The Secretary did
not review or otherwise analyze any revenue sharing payments for the seven-year
renewal period of the Compact because the Compact did not provide for revenue sharing
during the renewal period.

…. [W]e are concerned that the [arbitration] panel's decision has the effect of
establishing and enforcing terms that were not before the Department in 2002, potentially
undermining the Secretary's mandated role under IGRA.

Similarly, we also have serious concerns about the extension of revenue sharing during
years 15-21 because we did not conduct an analysis of the extension.  We review revenue
sharing requirements in compacts with great scrutiny….  Our analysis first looks to
whether a state has offered meaningful concessions to a tribe….  We then examine
whether the value of the concessions provide substantial economic benefits to the tribe in
a manner justifying the revenue sharing.

In this case, we cannot provide any certainty that the extension of revenue sharing into
the seven-year renewal period complies with the requirements of IGRA.  We have not
determined whether the State has offered meaningful concessions to the Nation.  Nor
have we determined whether the value of any concessions provide substantial economic
benefits to the Nation in a manner justifying the [Years 15-21] revenue sharing payments.
We caution the parties about their reliance on the terms because we have not determined
that they are lawful.

Redeye Decl., Ex. A, p. 2-3 (citations omitted).  The Department concluded by inviting the parties to submit the Years 15-21 payment obligation for the requisite Secretarial review.  *Id*. at p. 3.

On April 19, 2021, the Nation requested that the State cooperate with it in submitting the renewal period payment obligation to the Secretary of the Interior in light of the Department's April 15, 2021 Letter inviting the parties to do so.  Redeye Decl., Ex. B.  On April 22, 2021, the State made clear that it would not do so.  *Id*. at ¶¶ 9, 10.

## ARGUMENT

## I.     The Rule 60(b)(6) Standard

Under Federal Rule of Civil Procedure 60(b), a court may "[o]n motion and just terms, … relieve a party … from a final judgment" for a range of reasons including mistake, excusable neglect, fraud, and newly discovered evidence.  *See* Fed. R. Civ. P. 60(b)(1)-(5).  Sub-provision 60(b)(6) provides that, in addition, a court may grant the motion for "any other reason that justifies relief."  *Id.* at (b)(6).  Where there exist "extraordinary circumstances, or where the judgment may work an extreme and undue hardship," Rule 60(b)(6) "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice."  *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) (quotation marks omitted).  Indeed, under such circumstances, Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case," *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (quoting *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986)), and "should be liberally construed when substantial justice will thus be served," *Brien*, 588 F.3d at 176.

As set forth below, the circumstances of this case are both extraordinary and, absent the Nation's requested relief, will result in extreme and undue hardship for the Nation, including

potential enforcement action by the NIGC that could lead to severe sanctions, including the temporary or even permanent closure of the Nation's gaming facilities. They amply warrant this Court relieving the Nation from the November 8, 2019 judgment in this case – whether through a temporary stay of enforcement while the Secretary passes upon the legality of the renewal period payment obligation or, if the matter is not submitted (by virtue of the State's continued choice) to the Secretary for review, through vacatur of the judgment.

To be clear at the outset, nothing set forth below seeks to challenge the merits of the panel majority's decision, or the merits of the decisions of this Court or the Second Circuit upholding that decision. Rather, the discussion below explains the extraordinary circumstances justifying this Court's exercise of its broad discretion to grant relief under Rule 60(b)(6) in light of the Department's clear declaration that: (1) "the Secretary did not review or otherwise analyze any revenue sharing payments for the seven-year renewal period of the Compact"; (2) the Department accordingly "cannot provide any certainty that the extension of revenue sharing into the seven-year renewal period complies with the requirements of IGRA"; and (3) that it "caution[s] the parties about their reliance on the terms because we have not determined that they are lawful." Redeye Decl., Ex. A, pp. 1-2.

## II.    The Circumstances of this Case are Extraordinary.

Congress enacted IGRA in part to "protect [class III] gaming as a means of generating tribal revenue." 25 U.S.C. § 2702. To fulfill this goal and the trust obligations of the United States to Indian tribes, the Secretary examines proposed revenue-sharing arrangements with "great scrutiny" to determine "whether the state has offered meaningful concessions" in exchange for a share of tribal gaming revenues, and "whether the value of the concessions provides substantial economic benefits to the tribe proportional to the revenue sharing required"

by the proposed arrangement.[3]  This evaluation is a mandatory and indispensable component of the United States' trust responsibility to Indian tribes.[4]  The Department's April 15, 2021 letter is unequivocal in stating "[t]he Secretary did not review or otherwise analyze any revenue sharing payments for the seven-year renewal period of the Compact[.]"  Redeye Decl., Ex. A, p. 2.  The payment obligations against the Nation cannot be lawfully enforced given that fact.

While the arbitration panel acknowledged that "it is beyond dispute that the Panel has no legal authority to usurp the Secretary's role and enforce a Compact term that the Secretary did not approve," Dkt. No. 2-4 at 42, it did not affirmatively find that such review had in fact occurred, much less that it had been undertaken with the "great scrutiny" required.  It instead concluded that IGRA's Secretarial review requirement had been met because "renewal was part of the Compact that was reviewed and deemed approved."  *Id*.  The panel, in other words, found Secretarial approval by *inference* from a term that it had determined to be "ambiguous" and "silent" as to the Years 15-21 payment obligation.  *Id.* at 36, 24-25; *see also* Dkt. No. 2-15 at p. 282 (Panel Chair expressing "utter bafflement" as to "[w]hat does renewal mean?").  This Court and the Second Circuit affirmed that conclusion on manifest disregard review.

But the inference has now been shattered.  The Department of the Interior has stated in no uncertain terms that:

---

[3] Aug. 17, 2010, Letter of Department to Habematolel Pomo Tribe at 3, https://www.indianaffairs.gov/sites/bia.gov/files/assets/as-ia/oig/oig/pdf/idc1-024698.pdf; *see also* October 21, 2016 Letter of Department to Viejas Band of Kumeyaay at 2 (same), https://www.indianaffairs.gov/sites/bia.gov/files/assets/as-ia/oig/pdf/508%20Compliant%202016.10.31%20Viejas%20Deemed%20Approved%20Compact_0.pdf.
[4] *See, e.g.,* Nov, 21, 2001, Letter of Department to Pueblo of Santa Clara at 1, https://www.indianaffairs.gov/sites/bia_prod.opengov.ibmcloud.com/files/assets/as-ia/oig/oig/pdf/idc1-025720.pdf  ("Department has a trust obligation to Indian tribes to ensure that the benefit received by the State . . . is appropriate in light of the benefit conferred on the tribe.").

In 2002, the Secretary analyzed the revenue sharing payments for the initial 14 year term of the Compact and determined that they were consistent with IGRA.  The Secretary did not review or otherwise analyze any revenue sharing payments for the seven year renewal period of the Compact[.]

Redeye Decl., Ex. A, p. 2.  As a result, the Department has made plain that

[w]e have not determined whether the State has offered meaningful concessions to the Nation.  Nor have we determined whether the value of any concessions provide substantial economic benefits to the Nation in a manner justifying the [Years 15-21] revenue sharing payments.

*Id*. at 2-3.

The basis for enforcing renewal period payment obligations against the Nation has evaporated in the face of these statements.  The Department has stated in no uncertain terms that "meaningful concession" and "substantial economic benefit" analysis has not taken place with respect to the renewal period payments.  Such analysis cannot be backfilled by inference.  Neither the arbitration panel, nor this Court nor the Second Circuit, purported to conduct an economic analysis of this sort, and under the statute the authority to perform it unquestionably resides in the Department.  Without that analysis, there is no colorable basis to conclude that the payments being demanded by the State during the renewal period are anything other than an illegal tax under IGRA, which is why the Department – which specifically noted that in 2002 it deemed the Compact approved "but only to the extent it was consistent with [IGRA]," *id*. at 1 – has cautioned the parties about the potential unlawfulness of making payments absent such review.  Rule 60(b)(6) confers upon this Court "broad discretion … to grant relief when appropriate to accomplish justice."  *Brien*, 588 F.3d at 176 (quotation marks omitted).  If the

10

State continues to resist Secretarial review the very purpose of which is to assess and ensure legality, vacatur of the judgment in favor of the State would be called for here.[5]

Federal courts have vacated judgments under Rule 60(b) in analogous circumstances. In 1994, the Fond du Lac Band of Lake Superior Chippewa Indians entered an agreement with the City of Duluth, Minnesota, whereby the Band agreed to pay 19% of its gross gaming revenues to the City in exchange for certain benefits, including exclusivity protections. *See City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 785 F.3d 1207, 1208 (8th Cir. 2015). The NIGC – charged by Congress with enforcement authority under IGRA, *see* 25 U.S.C. §§ 2705-06; 25 C.F.R. Part 573 – deemed the payments consistent with IGRA, and the agreement was entered as part of a consent decree issued by the United States District Court for the District of Minnesota. *Id*. at 1208-09. In 2009, the Band asserted that the payments violated IGRA, began withholding them, and submitted the matter to the NIGC for review. *See id*. at 1209. The NIGC agreed that the payments violated IGRA and in 2011 ordered the Band to cease making the payments or to face sanctions, including the potential closure of its casino. *Id*.

The Band then moved the district court under Rule 60(b) to set aside its prior consent decree authorizing the payments. The district court granted the motion and relieved the Band from making future payments but denied it as to the payments withheld prior to the NIGC's ruling because those monies had not yet been declared by the agency to violate the statute when they were withheld. *Id*.

---

[5] The Department has made clear its view of the critical federal policy concerns implicated by these circumstances: "We are concerned that the panel's decision has the effect of establishing and enforcing terms that were not before the Department in 2002, potentially undermining the Secretary's mandated role under IGRA." Redeye Decl., Ex. A, p. 2. This "could set a precedent for those who wish to evade review by the Secretary." *Id*.

The Eighth Circuit reversed as to the withheld payments because the district court had

failed to consider Congress's purposes in enacting IGRA in determining whether the Band

should be relieved of the obligation to turn over those payments.  According to the Court,

> Congress indicated that its intent upon passing IGRA was "to provide a statutory
> basis for the regulation of gaming by an Indian tribe adequate ... to ensure that the
> Indian tribe is the primary beneficiary of the gaming operation." 25 U.S.C.
> § 2702(2).... Congress has noted that for tribes, gaming income "often means the
> difference between an adequate governmental program and a skeletal program
> that is totally dependent on Federal funding."

*Id.* at 1211 (citing S. Rep. No. 100–446, at 3 (1988)).  These congressional goals were

"deserving of significant weight" and the district court erred "by failing to consider this

congressional policy" in its Rule 60(b)(6) analysis.  *Id.* at 1212.

On remand, the district court considered the congressional purposes and granted the

Band's motion as to the withheld payments.  In doing so, it noted that "the parties voluntarily

agreed" to the 19% payments, and that "the NIGC initially endorsed" the payments.  *City of

Duluth v. Fond du Lac Band of Lake Superior Chippewa*, No. 09-CV-2668 SRN/LIB, 2015 WL

4545302, at *5 (D. Minn. July 28, 2015).  But the court found relief nevertheless justified under

Rule 60(b)(6) because "directing millions of dollars away from the Band is directly contrary to

the IGRA's goals of promoting tribal economic development, tribal self-sufficiency, and strong

tribal government," by "the strong congressional intent that tribes be the primary beneficiaries of

gaming revenues," and by "the fact that the Band's obligation to pay [the monies] under the

Agreements *is now considered—by the agency tasked with making such determinations—to

violate that intent*[.]"  *Id*. (emphasis added).

These same principles squarely apply here.  Congress tasked the Secretary of the Interior

with reviewing revenue-sharing provisions in order to safeguard tribal revenues and to ensure

compliance with IGRA and the federal trust obligations to Indian tribes.  It is now beyond doubt

that "meaningful concession" and "substantial benefit" review did not take place here as required by the statute.  The very agency tasked with undertaking such review has made it clear that no colorable basis exists for concluding otherwise and has warned that this fact leaves the legality of such payments seriously in doubt.  Indeed, the Nation's request for relief under Rule 60(b) is even more compelling than the Band's request in *Fond du Lac*.  There, the NIGC had originally "endorsed" the payments that it later determined to be unlawful, a factor the court found weighed against relief under Rule 60(b)(6).  *Id*.  Here, the Department's Letter confirms that no such endorsement ever occurred.

Accordingly, this Court should exercise its broad discretion under Rule 60(b)(6) and stay enforcement of its November 8, 2019 judgment until the Secretary of the Interior has been provided the opportunity to fulfill her statutory duty to review and pass upon the legality of the renewal period obligation.  Absent the State's cooperation in such review, the Court should vacate the judgment.

## III.   The Judgment May Work an Extreme and Undue Hardship Absent the Nation's Requested Relief.

In addition to granting Rule 60(b)(6) relief in response to extraordinary circumstances, this Court may also do so "where the judgment may work an extreme and undue hardship[.]" *Brien*, 588 F.3d at 176.  Where that is the case, as it is here, Rule 60(b)(6) "should be liberally construed when substantial justice will thus be served."  *Id*.

That the Court's November 8, 2019 judgment may work an extreme and undue hardship on the Nation is clear.  The Department of the Interior has explicitly stated that the renewal period payment obligation has not been reviewed for compliance with IGRA, has expressed serious concern about the legality of those payments, and has for those reasons pointedly cautioned the Nation against making them.  Redeye Decl., Ex. A, pp. 2-3.  Enforcement of the

judgment would accordingly place the Nation in the precarious position of making payments whose legality an authoritative federal agency has called into doubt.

As in the *Fond du Lac* case, the Nation could well face enforcement action by the NIGC for making the payments, action which could result in the closure of its gaming facilities.  When the NIGC becomes aware of an actual or potential violation of IGRA, it may issue "a letter of concern … detailing concerns regarding compliance with [IGRA]," 25 C.F.R. § 573.2, and initiate an investigation of the potential violation, 25 C.F.R. Part 571.  It may also forego that step and directly "issue a notice of violation to any person for violations of any provision of [IGRA]."  25 C.F.R. § 573.3.  In either case, if the NIGC determines a violation of IGRA has occurred, it "may issue an order of temporary closure of all or part of an Indian gaming operation *if … [t]he respondent fails to correct [the] violation[]*," 25 C.F.R. § 573.4 (emphasis added), *and see* 25 U.S.C. § 2713(b)(1) – and may thereafter determine that the closure "should be made permanent," 25 U.S.C. § 2713(b)(2).

Here, if the NIGC determines that renewal period payments violate IGRA for lack of Secretarial review – which it could do based on the Department's April 15, 2021 letter alone – or, after investigation, that the payments are not justified by the provision of meaningful concessions and substantial benefits by the State and hence constitute an unlawful tax under section 2710(d)(4), it could order the Nation to cure the violation by ceasing to make the payments or face closure of its casino.  *See Fond du Lac Band*, 785 F.3d at 1208 ("In July 2011, the [NIGC] issued a Notice of Violation regarding the Fond du Lac Casino after determining that the Band's payments to the City violated IGRA …. The Gaming Commission ordered the Band

*not to resume payments* to the City or face fines and *closure of the casino*.") (emphasis added).[6]
And the Nation will be unable to "correct the violation," 25 C.F.R. § 573.4, so long as this
Court's November 8, 2019 judgment requiring the Nation to make the payments remains in
effect and is enforced.  Thus, the Nation faces the very real possibility of an NIGC closure order
for a violation of IGRA that it will have no ability to cure, thereby rendering the closure
potentially permanent.[7]

      This is not a fanciful concern.  The NIGC plainly possesses this authority and, in light of
the Department's April 15, 2021 letter, the exercise of that authority may well be mandatory.  As
this Court itself has declared:

> Section 2713(a)(3) [of IGRA] provides that the NIGC *shall* issue a
> complaint *whenever* it has reason to believe a tribal gaming facility is operating in
> violation of the IGRA. This language is mandatory, it connotes immediacy, and it
> is entirely consistent with Congress's charge to the NIGC to safeguard the integrity
> of Indian gaming.  Congress directs the NIGC to act upon any indication of the
> existence of a violation; it does not give the Commission discretion to ignore
> violations or choose not to issue a [Notice of Violation].

*Citizens Against Casino Gambling in Erie Cty. v. Hogen*, No. 07-CV-0451S, 2008 WL 4057101,
at *3 (W.D.N.Y. Aug. 26, 2008) (emphasis in original).

      The upshot would be devastating for the Nation.  Because the Nation makes revenue-
sharing payments under the Compact from the aggregate revenues of all its gaming facilities, an

---

[6] The NIGC notice of violation in *Fond du Lac Band* identified the revenue-sharing payments as
violative of IGRA and stated as "Measures Required to Correct the Violation" that "[t]he Band
must cease performance under the 1994 Agreements of those provisions identified in this NOV
as violating IGRA…. The violation … may result in the assessment of civil fines against the
Band in an amount not to exceed $25,000 per violation per day…. [and] temporary closure if the
violation is not corrected." NIGC, Notice of Violation, NOV-11-02, July 12, 2011 at 18-19,
https://www.nigc.gov/images/uploads/enforcement-actions/NOV1102redacted.pdf
[7] An NIGC conclusion that the renewal period payments violate IGRA under the "meaningful
concessions" and "substantial economic benefits" analysis would not conflict with any
conclusion of the panel majority, this Court, or the Court of Appeals – as none of the three
tribunals addressed that issue in any way.

NIGC closure order based on the illegality of the payments and a failure to correct the violation would shut the doors to *all* of the Nation's gaming facilities.  As set forth in the April 22, 2021 affidavit of Cheryl A. Watts, Comptroller for the Nation, the Nation's gaming facilities account for "nearly two thirds" of the Nation's governmental budget, upon which the Nation depends to fund "an array of critical governmental services, including public safety, fire and rescue; comprehensive public health programs and health facilities; member housing; elder and disability services; veterans services; general welfare benefits, early childhood education; emergency management; sanitation and environmental protection; public works, transportation and infrastructure, among many others."  *See* Aff. of Cheryl A. Watts in Support of the Nation's Motion to Stay Enforcement of the Judgment Pending Determination of the Nation's 60(b) Motion ("Watts Aff.")[8] at ¶¶ 16-17.[9]  An order of closure of the Nation's gaming facilities would hence be "disastrous for the Nation's government, crippling its ability" to provide these core government services.  *Id.* at ¶ 18; *see also* S. Rep. No. 100–446 at 3 (1988), reprinted in 1988 U.S.C.C.A.N. 3071, 3072 (tribal gaming income "often means the difference between an adequate governmental program and a skeletal program that is totally dependent on Federal funding").

And that is not even the full extent of the hardship.  In 2018, then-President Gates summarized in a sworn statement for the arbitration panel the vital role the Nation's gaming facilities play in supporting the livelihoods of both Seneca citizens and non-citizens in Western New York:

---

[8] In connection with its Rule 60(b) Motion, the Nation filed contemporaneously a motion to seal certain portions of the Watts Affidavit that contained sensitive and confidential information.
[9] *See also* https://sni.org/departments/ (setting forth Seneca Nation government departments and services).

> The Nation … is one of the largest employers in Western New York, currently employing approximately 3,700 individuals in its gaming operations. The annual salaries and wages of the Seneca Gaming Corporation ("SGC") total approximately $127 million, payroll taxes total approximately $11 million, and other benefits total approximately $24 million. Over 2,000 of these employees are covered under SGC's health insurance plans, including 827 families.

Redeye Decl., Ex. F at ¶ 26 (October 23, 2018 Sworn Witness Statement of Nation President Todd Gates). While the COVID-19 pandemic has affected economic conditions everywhere, the impacts of the Nation's gaming endeavors remain positive, far-reaching, and vital to its employees, Indian and non-Indian alike.

Thus, independent of the extraordinary circumstances set forth in Section II, the potential for extreme hardship facing the Nation justifies this Court in exercising its broad discretion under Rule 60(b)(6) to stay enforcement of its November 8, 2019 judgment until the Secretary has reviewed and passed upon the legality of the Years 15-21 payments, or to vacate the judgment absent that review.

## IV.   The State Will Suffer No Harm if the Court Stays Enforcement of the Judgment

As demonstrated above, this case presents both extraordinary circumstances and the prospect of extreme undue hardship sufficient to justify relief under Rule 60(b)(6). If this Court agrees with the Nation on one or both of those bases, and if the State were to agree to submit the payments to the Secretary of Interior for review, a stay of enforcement would result in no harm to the State. The Secretarial review invited by the Department in its April 15, 2021 letter is limited by statute to a 45-day period, *see* 25 U.S.C. § 2710(d)(8)(C), and the judgment amount is, in the meantime, fully secured.

On December 12, 2019, this Court granted the Nation's motion to stay enforcement of its November 8, 2019 judgment pending appeal. *Seneca Nation of Indians v. New York*, 19-CV-

17

735S, 2019 WL 6768779 (W.D.N.Y. Dec. 12, 2019).  The Court's decision was premised on the

fact that the Nation had provided sufficient security for the judgment amount

> in the form of a restricted securities account held by KeyBank that contains deposits in excess of the judgment … through December 2018, plus an ongoing obligation to pay all future State Contribution under the terms of the compact…. This account, which is fully described by Cheryl Watts, Comptroller of the Nation, is subject to multiple agreements with lending institutions that are specifically designed to ensure that the Nation will not default on any contingent liability to the State with respect to the disputed State Contribution….
>
> Under the agreements, Fifth Third Bank acts as a secured party for the account and exercises administrative control over it … The Nation cannot make any withdrawals from the account without the express permission of Fifth Third Bank … The account currently contains the full amount of disputed State Contribution, and the Nation is bound by the lending agreements to continually deposit all present and future State Contribution payments on a rolling basis and has done so.

*Id*. at *3.

As set forth in the affidavit of the Nation's Comptroller, all of these safeguards remain in

place.  The funds currently in the account are sufficient to satisfy the judgment, thereby fully

protecting the State's interest in the disputed funds if a stay of enforcement is granted.  *See* Watts

Aff. at ¶¶ 7, 12-13.  The Account continues to be (1) held by KeyBank National Association; (2)

under the control of the independent non-party bank, Fifth Third Bank; and (3) subject to the

same multiple agreements with those lending institutions.  *Id.* at ¶¶ 5, 7-9.  The Nation, for

example, cannot make any withdrawals from the account without the express permission of Fifth

Third Bank, and the Nation must continually deposit all present and future contribution payments

on a rolling basis.  *Id.* at ¶¶ 5, 9.

In sum, all of the safeguards and restrictions that gave this Court "confiden[ce] that the

Nation has and will continue to have sufficient funds to satisfy the judgment and its ongoing

State Contribution obligations," 2019 WL 6768779 at *4, remain intact.  The State will

18

accordingly suffer no harm should this Court stay enforcement of its judgment pending the 45-day review by the Secretary if the State decides to cooperate in that review.

## V.     The Issuance of the Appellate Mandate Does Not Foreclose the Nation's Requested Relief.

Finally, the Court of Appeals' mandate, issued on April 16, 2021, does not foreclose this Court from granting the Nation relief from its November 8, 2019 final judgment.  The Nation's Rule 60(b)(6) motion does not seek to relitigate matters considered and resolved by the Court of Appeals.  It is premised instead on the issuance of the Department's April 15, 2021 letter declaring affirmatively that the Secretary did not review and approve the renewal period payment obligation under the requisite meaningful concession and substantial benefit analysis, and accordingly cautioning the parties about the potential unlawfulness of such payments.  The Nation should not, as a matter of substantial justice, be required to make the disputed payments in light of the facts that the Department has now confirmed.

The Court of Appeals did not consider the Department's letter, which had not issued at the time of its decision.  The court also did not consider whether the Secretary had in fact reviewed and approved the disputed payments under meaningful concession and substantial benefit analysis, *see Seneca Nation of Indians v. New York*, 988 F.3d 618, 621 (2d Cir. 2021) ("We express no view about whether the Secretary's position when the Compact was deemed approved was that it in fact required additional payments during the renewal term"), and made no finding that such an analysis is not required under IGRA for revenue-sharing arrangements.

The Court of Appeals instead understood the scope of its review in much narrower terms, stating that "we consider *only* (1) *whether IGRA clearly imposes a requirement that the contract interpretation be subjected to the Secretary's further approval*," and whether the arbitrators disregarded that requirement.  *Id*. (emphasis added).  "We hold only that the arbitral panel …

19

reasonably concluded that its task here was a straightforward matter of contract interpretation not subject to the Secretary's approval." *Id*. Secretarial review of a contract interpretation and affirmative Secretarial analysis of revenue-sharing provisions are two distinct matters. The Court of Appeals concluded that the former is not required by IGRA; it drew no similar conclusion as to the latter. And it certainly expressed no opinion that the Nation should be forced to make payments which the Department has now declared could well be unlawful.

The Supreme Court has rejected the notion that under such circumstances "an appellate court's mandate bars the trial court from later disturbing the judgment entered in accordance with the mandate." *Standard Oil Co. of California v. United States*, 429 U.S. 17, 18 (1976); *see also id*. ("Like the original district court judgment, the appellate mandate relates to the record and issues then before the court, and does not purport to deal with possible later events. Hence, the district judge is not flouting the mandate by acting on the [Rule 60(b)] motion" in light of later events); *see also, e.g.*, *DeWeerth v. Baldinger*, 38 F.3d 1266, 1270 (2d Cir. 1994) (referring to "the rule established in *Standard Oil* that a district court may consider a Rule 60(b) motion when 'later events' arise that were not previously considered by the appellate court"). The Department's letter very much is a "later event" that this Court can fully consider in exercising its authority under Rule 60(b).

Nor can the Nation be faulted for the timing of the Department's letter. The Nation solicited the views of the Department in late 2016, at the onset of its dispute with the State. By letter of January 19, 2017, the Department confirmed the accuracy of the Nation's position, stating that "an extension of the revenue sharing requirement beyond the 14-year Compact duration would be tantamount to an increase in revenue sharing, requiring additional meaningful concessions from the State with corresponding substantial economic benefit to the Nation." Dkt.

20

No. 2-8.  Under a new Administration, the Department withdrew that letter in late 2017, noting the fact that the arbitration had by then commenced, but in no way calling into question the statements made by the Department in January 2017 about the lack of a Departmental determination that renewal period payments would be justified by meaningful concessions and substantial economic benefit to the Nation.  Dkt. No. 2-12.

In April 2019, after the arbitration had concluded, the Nation again urged the Department to state its views of the disputed payments.  The Department declined, noting that absent "certification from the Governor or other State representative that he or she is authorized under State law to enter into the compact or amendment," the Department could not formally review the payments under Department regulations.  Dkt. No. 2-17, p. 1.  However, the Department plainly noted that "we look forward to receiving a new submission … in compliance with" Department regulations.  *Id*.  The State demurred.  Thereafter, the Nation urged this Court and the Court of Appeals to solicit the position of the Department through a referral under the primary jurisdiction doctrine, but both courts declined, *Seneca Nation of Indians v. New York*, 420 F. Supp. 3d 89, 105-06 (W.D.N.Y. 2019); *Seneca Nation of Indians v. New York*, 988 F.3d 618, 629 (2d Cir. 2021).

The Nation, in sum, has been consistent, throughout time and across different Administrations, and before both the arbitration panel and the courts, that the Interior Department needs to conduct meaningful concession and substantial benefit review before the Nation can lawfully make renewal period payments to the State.  While the State has shied away from such review, the Department has now reiterated that payments cannot lawfully be made in its absence.  The cause of any delay does not rest with the Nation, and the passage of time

provides no warrant for further avoidance of the regulatory review necessary to a determination of the legality of the disputed payment obligations.

## CONCLUSION

The Nation respectfully requests that this Court exercise its broad discretion under Rule 60(b)(6) and grant the Nation relief from enforcement of its November 8, 2019 final judgment. If the State agrees to submit the disputed payment obligation for Secretarial review, the relief should take the form of a stay of enforcement pending the duration of that review.  If Secretarial review will not occur, this Court should vacate its November 8, 2019 final judgment, rendering the payment obligation imposed by the panel unenforceable under IGRA and leaving the parties to negotiate new revenue-sharing terms if they desire.

Dated:  April 23, 2021                          Respectfully submitted,


By:  s/ Carol E. Heckman, Esq.
          Carol E. Heckman, Esq.
          Lee M. Redeye, Esq.
          *Counsel for Seneca Nation of Indians*
          50 Fountain Plaza, Suite 1700
          Buffalo, New York 14202
          Telephone:  (716) 853-5100
          Facsimile:  (716) 853-5199
          checkman@lippes.com
          lredeye@lippes.com

          Riyaz A. Kanji, Esq.
          David A. Giampetroni, Esq.
          Kanji & Katzen P.L.L.C.
          303 Detroit Street, Suite 400
          Ann Arbor, Michigan  48101
          Telephone:  (734) 769-5400
          Facsimile:  (734) 769-2701
          rkanji@kanjikazen.com
          dgiampetroni@kanjikatzen.com

John G. Horn, Esq.
Harter Secrest & Emery LLP
50 Fountain Plaza, Suite 1000
Buffalo, NY 14202
Telephone: (716) 853-1616
Facsimile: (716) 853-1617
jhorn@hselaw.com