# EXHIBIT E

# Seneca Nation of Indians



**President -** Matthew B. Pagels
**Clerk -** Marta L. Kettle

**12837 ROUTE 438**
**CATTARAUGUS TERRITORY**
**SENECA NATION**
**IRVING, NY 14081**

**Tel. (716) 532-4900**
**FAX (716) 532-6272**

**Treasurer -** Rickey L. Armstrong Sr.

**90 OHI:YO' WAY**
**ALLEGANY TERRITORY**
**SENECA NATION**
**SALAMANCA, NY 14779**

**Tel. (716) 945-1790**
**FAX (716) 945-1565**

## PRESIDENT'S OFFICE

March 21, 2021

Hon. Joseph R. Biden, Jr.
President of the United States of America
1600 Pennsylvania Avenue, N.W.
Washington, D.C. 20500

Hon. Debra Haaland
United States Secretary of the Interior
1849 C Street, N.W.
Washington, D.C. 20240

### PETITION OF THE SENECA NATION OF INDIANS
### FOR REDRESS AGAINST THE STATE OF NEW YORK
### PURSUANT TO THE TREATY BETWEEN THE SIX NATIONS AND THE UNITED STATES OF
### NOVEMBER 11, 1794 AND THE FEDERAL TRUST RESPONSIBILITY

Greetings President Biden and Secretary Haaland:

I write to request your immediate assistance to protect the interests of the Seneca Nation of Indians against the efforts by the State of New York to seize nearly $500 million of the Nation's gaming revenue currently held in escrow. These funds are disputed "exclusivity payments" associated with the Nation's Class III gaming compact with the State entered into in 2002 but never approved by the Secretary of the Interior. On January 17, 2017, the Interior Department confirmed that payments during a seven-year extension period violated federal law. However, during the Trump

Administration, that guidance was withdrawn, leaving the Nation with no legal protection from the federal government.

The Nation has thus been forced to exhaust its remedies challenging the extension terms of the Compact through arbitration. The State prevailed in that arbitration, but the Nation's representative on the panel – former Assistant Secretary-Indian Affairs Kevin Washburn – wrote a compelling dissent exposing the error of the arbitration panel's decision.[1] We have sought to enjoin the effect of that decision in litigation without success, and now are only days away from the loss of nearly $500 million and over $300 million more if the Compact payment provisions are sustained into the future.

The Nation asserts (i) that any exclusivity payment obligation during the Compact extension period constitutes a Compact amendment that requires Interior Department approval to be valid, and (ii) that the payment provisions inherently violate federal law as an illegal "tax, fee, charge, or other assessment" because they bear no relation to supporting gaming operations.[2] *We request a meeting with Interior Department officials as soon as possible to discuss how the federal government can intervene in this dispute on our behalf.*

I.      The Compact and Background on the Dispute.

The Nation's Class III gaming compact with the State provides for gaming to be conducted at three sites in a 10,500 square mile area of the Nation's aboriginal territory in Western New York (Allegany Territory, Buffalo Creek Territory, and Niagara Falls Territory) ("Exclusivity Zone"). The Compact has a term of 14 years, with an automatic extension for an additional 7 years barring any objection by one of the parties. For the exclusive right to offer Class III slot machines in the Exclusivity Zone, the Compact provides a sliding scale of payments from 18-25% of the slot machine "net drop". Because of the high payment rate, and the exclusionary impact of the Compact on two other Tribal nations within the Zone, Secretary of the Interior Gale Norton did not sign the Compact. Rather, she allowed the Compact to take effect by operation of law under

---

[1] *See In the Matter of Arbitration between the State of New York v. Seneca Nation of Indians*, Dissent of Kevin Washburn on the Partial Final Award, Jan. 7, 2019 (AAA Case No. 01-17-0005-3636).

[2] *See* 25 U.S.C. § 2710(d)(4) (hereinafter "IGRA").

the Indian Gaming Regulatory Act[3], an approach she wrote she was "reluctant" to use under the circumstances.[4]

During the first 14 years of the Compact, the Nation paid the State approximately $1.6 billion in exclusivity payments. An earlier dispute over the games being operated at the three State-licensed racetrack gaming facilities within the Zone was resolved favorably in 2013, with the Nation retaining $209 million in disputed payments.

At the end of 2016, neither party objected to the automatic extension of the Compact for an additional 7-year term. The Nation asked for technical assistance from the Interior Department on this issue, which was provided in a January 19, 2017 from the Director of the Office of Indian gaming—"*our understanding of the revenue sharing provision in the Compact was that its duration was for 14 years…[i]n our view, the Nation's 14-year revenue sharing obligation granted the Nation 21 years of exclusivity.*"[5]

Armed with this interpretation, on March 31, 2017, the Nation gave notice to the State that we did not believe that the extension of the Compact term obligated the Nation to make 25% exclusivity payments for seven more years.

The State objected to the Nation's position and soon thereafter filed an arbitration proceeding under the terms of the Compact. Out of an abundance of caution, the Nation began retaining the disputed payments in an escrow account, which now totals nearly $500 million. On December 15, 2017, the Interior Department under Secretary Ryan Zinke withdrew its prior technical assistance supporting the Nation for no clear reason.[6] On April 12, 2019 a three-arbitrator panel ruled 2-1 in favor of the State, acknowledging that the Compact provisions were ambiguous, but resolving the ambiguity in favor of the State. Former ASIA Washburn filed a vigorous dissent, asserting that the majority had ignored federal law in resolving the dispute in the State's favor.[7]

---

[3] 25 U.S.C. § 2710(d)(8)(C).

[4] *See Letter from U.S. Secretary of the Interior Gale Norton to Seneca Nation of Indians President Cyrus Schindler,* Nov. 12, 2002.

[5] *See Letter from Paula L. Hart, Department of Interior Office of Indian Gaming to Seneca Nation of Indians President Todd Gates,* Jan. 19, 2017 (emphasis added).

[6] *See Letter from Maria K. Wiseman, Acting Director, Office of Indian Gaming to Seneca Nation of Indians President Todd Gates,* Dec. 15, 2017.

[7] *See id. supra* note 1 at 3. ("The effect of the Panel's decision, of course, is to take resources from the Nation that the State appears not to have explicitly requested in negotiations or included in the terms of

On June 6, 2019, the Nation filed a federal lawsuit seeking to vacate the arbitration panel's decision.  The federal district court ruled against the Nation and one month ago, the Second Circuit Court of Appeals upheld the decision, but rendered no opinion as to the underlying merits reached by the panel.[8]  The Nation filed a motion for rehearing on March 8, 2021, which is now pending.  If the rehearing effort is unsuccessful, it is expected that a mandate will issue from the Second Circuit and the State will move immediately for release of the funds now held in escrow.

II.     THE COMPACT PAYMENT PROVISIONS VIOLATE FEDERAL LAW.

The Nation asserts two primary reasons why it is not obligated to make any further exclusivity payments to the State.

First, the Compact expressly requires the Nation to make exclusivity payments for a 14-year period, but does not expressly require the Nation to make such payments during the extension period. As noted, the Interior Department confirmed this interpretation in 2017, which was also the basis for former ASIA Washburn's dissenting opinion in the arbitration.  The Nation asserts that requiring the Nation to make payments during the extension period constitutes a Compact amendment requiring Secretarial review and approval, which has not occurred.  Thus, no further payments to the State are required.

Secondly, the Nation asserts that the Compact payment provisions inherently violate federal law in that they constitute a "tax, fee, charge, or other assessment" on the Nation's gaming operations in violation of IGRA. As noted in the Department's 2017 technical guidance letter, the 9th Circuit's *Rincon*[9] decision establishes standards governing how exclusivity payments must comport with IGRA, including whether the payments relate directly to the operation of gaming activities and whether the

---

the Compact.  As a result, the State has received from this Panel a benefit that it failed to obtain in Compact negotiations.  The Panel's new provision rewrites the Compact in a way that harms the Nation and provides an unjustified windfall to the State.").

[8] *See Seneca Nation of Indians v. State of New York*, 420 F.Supp.3d 89 (W.D.N.Y. 2019), *aff'd* (2d. Cir. Dkt. No. 19-4022, Feb. 22, 2021) ("We express no view about whether the Secretary's position when the Compact was deemed approved was that it in fact required additional payments during the renewal term.").

[9] *Rincon Band of Luiseno Indians of the Rincon Reservation v. Schwarzenegger*, 602 F.3d 1019 (9th Cir. 2010), *cert. denied*, 113 S.Ct. 3055 (2011).

payments reflect a negotiated bargain benefitting the Tribe.  As concluded by the Department—

> Rincon supports our understanding that an extension of the revenue sharing requirement beyond the 14-year Compact duration would be tantamount to an increase in revenue sharing, requiring additional meaningful concessions from the State with corresponding substantial benefit to the Nation.

For these, and related concerns regarding the Compact's conformity with federal law, the Nation asserts that it is not required to make exclusivity payments following the expiration of the 14-year Compact term.

III.     THE UNITED STATES' TREATY AND TRUST OBLIGATION TO ASSIST THE SENECA
         NATION AT THIS CRITICAL TIME.

Article VII of the Treaty between the Six Nations and the United States provides—

> Lest the firm peace and friendship now established should be interrupted by the misconduct of individuals, the United States and Six Nations agree, that for injuries done by individuals on either side, no private revenge or retaliation shall take place; but, instead thereof, complaint shall be made by the party injured, to the other: By the Six Nations or any of them, to the President of the United States . . . and such prudent measures shall be pursued as shall be necessary to preserve our peace and friendship unbroken…"

The Nation is under attack from the State of New York and its officials seeking control over nearly $500 million in disputed funds and over $300 million more during the next three years of the Compact.  The Nation hereby invokes the provisions of Canandaigua Treaty of 1794 requesting the immediate assistance of you, the Interior Secretary, and your officials to protect our interests from this attack.

In addition, as a federally-recognized Tribal nation, the federal government has a trust responsibility to protect the interests of Tribal nations when engaging in federally regulated activities.  In enacting IGRA, Congress made clear that "a principal goal of

Federal Indian policy is to promote tribal economic development, tribal self-sufficiency, and strong tribal government" and that IGRA was enacted "to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments."[10]

The Nation's Class III gaming facilities are the primary source of the Nation's governmental revenue to support our governing activities and service delivery to our people.  If the State succeeds in its efforts to seize the disputed gaming revenues, the Nation's self-determination and self-sufficiency will be greatly harmed in violation of federal law and the federal government's trust responsibility.

IV.    REQUESTED RELIEF.

The Nation requests the following relief—

- A meeting between myself and members of our Council with appropriate senior Interior officials as soon as possible to discuss this request and confirm the federal government's commitment to assist the Nation;

- Intervention by the federal government in the ongoing legal dispute between the Nation and the State to enjoin the release of the disputed funds to the State pending resolution of the underlying Compact compliance issues;

- Initiation of legal action by the federal government against the State confirming the invalidity of the Compact payment provisions; and

- Such other relief as may be necessary to protect the Nation's interests.

V.    CONCLUSION.

Mr. President and Secretary Haaland, the Seneca Nation has been an ally of the United States bound by treaty since 1794.  That relationship has provided mutual benefit to both of our governments and our people.  However, too often, the United States has abandoned its commitment to protect our interests at the hands of New York State officials.

---

[10] 25 U.S.C. § 2702(1).

In 1790, our Chief Cornplanter wrote to President George Washington requesting immediate action to protect peaceful relations between our two nations that was being undermined by predatory land speculators supported by the State.  The President wrote in response—

> …I observe to you, and request it may sink deeply into your minds, that it is my desire, and the desire of the United States, that all miseries of the late war should be forgotten, and buried forever.  That, in the future, the United States and the Six Nations should be truly brothers, promoting each other's prosperity by acts of mutual friendship and justice….Here, then, is the security for the remainder of your lands.  No State, nor person, can purchase your lands, unless at some public treaty, held under the authority of the United States.  The General Government will never consent to your being defrauded, but it will protect you in all your just rights…

As with our lands, so too should this promise stand in support of protection our national economic wealth.  The people of the Seneca Nation, our Council and I await your reply to this request.  Please contact the Nation's Special Counsel Robert Odawi Porter (rob@odawilaw.com) to confirm meeting arrangements.

Nya:wëh (thank you),

Matthew B. Pagels
Seneca Nation President

CC:
Jennifer VanderHeide, DOI Chief of Staff
Bob Anderson, DOI Principal Deputy Solicitor
Bryan Newland, DOI Principal Deputy Assistant Secretary - Indian Affairs
Paula Hart, DOI Director, Office of Indian Gaming