UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SENECA NATION OF INDIANS,

                    Petitioner,

        v.                                              **DECISION AND ORDER**
                                                         19-CV-735S
STATE OF NEW YORK,

                    Respondent.

## I. INTRODUCTION

This litigation concerns the Seneca Nation of Indians' ("the Nation") obligation to pay hundreds of millions of dollars in revenue sharing to the State of New York under the terms of a 2002 gaming compact.   In 2019, a panel of arbitrators determined that the compact requires such payments.   This Court thereafter confirmed the arbitration award and entered judgment in the State's favor.   The United States Court of Appeals for the Second Circuit subsequently affirmed.

Now maintaining that compliance with the judgment would cause it to violate the Indian Gaming Regulatory Act ("IGRA") and face an enforcement action by the National Indian Gaming Commission ("NIGC"), the Nation seeks to vacate the judgment under Rule 60 (b)(6) of the Federal Rules of Civil Procedure.[1]   Unpersuaded, this Court finds that the Nation's motion must be denied.

---

1 The Nation filed its motion on April 23, 2021.   See Docket No. 40.   Briefing, including supplemental notices of factual developments, concluded on October 1, 2021, at which time this Court took the motion under advisement without oral argument.   See Docket Nos. 45-48, 51, 52, 55, 56.

## II. BACKGROUND

This Court presumes familiarity with the facts and circumstances of this ongoing dispute, which have been thoroughly discussed in previous decisions.   See, e.g., Seneca Nation of Indians v. New York, 420 F. Supp. 3d 89 (W.D.N.Y. 2019) (confirming arbitration award); Seneca Nation of Indians v. New York, 19-CV-735S, 2019 WL 6768779 (W.D.N.Y. Dec. 12, 2019) (granting stay pending appeal); Seneca Nation of Indians v. New York, 988 F.3d 618 (2d Cir. 2021) (affirming confirmation of the arbitration award).

In short, the Nation and the State are parties to a 2002 gaming compact ("the Compact") that governs the Nation's right to conduct casino-style gaming in New York. After the initial 14-year term of the Compact, during which the Nation made revenue-sharing payments to the State in exchange for exclusive gaming rights, the Compact automatically renewed for an additional seven years when neither party objected to renewal.   Shortly thereafter, the parties disputed whether the Compact required continued revenue-sharing payments during the 7-year renewal period.

As required under the Compact, the parties submitted their dispute to binding arbitration.   After full proceedings before three arbitrators, a majority of the panel interpreted the Compact to require the continuation of revenue-sharing payments during the renewal period.   Essentially, the majority found that the Compact directly linked revenue-sharing payments to exclusivity, making the payments due and owing during all periods of exclusivity provided by the State, including during the renewal period.   This Court confirmed the arbitration award, and the Second Circuit affirmed.

Throughout the course of the proceedings, the Nation has maintained that the

2

Compact cannot be interpreted to require that revenue-sharing payments be made to the State during the renewal period because the Secretary of the Interior did not explicitly approve such payments, as required by IGRA, 25 U.S.C. § 2710 (d)(8).   The majority of arbitrators rejected this argument, finding instead that the approved Compact itself required such payments.   See Seneca Nation of Indians, 420 F. Supp. 3d at 95, 103-04 (summarizing the arbitration panel's treatment of the Nation's argument).   This Court was similarly unmoved by the Nation's position, finding that the arbitration panel's interpretation of the Compact was not made in manifest disregard of the Secretary-approval requirements.   See id. at 103-106.   And so too did the Second Circuit reject the Nation's arguments in the course of affirming this Court's confirmation of the panel's award.   See Seneca Nation of Indians, 988 F.3d at 626-29.

The Nation continues to press its position but now in a different context: in support of its bid to vacate[2] the judgment.   It maintains that its compliance with the judgment would violate IGRA's Secretary-approval requirements and may subject it to an enforcement action by the NIGC.   In support of that argument, the Nation submits two letters from the Department of the Interior (referred to herein at times as "the Department") relating to the Nation's March 21, 2021 inquiry concerning the legality of revenue-sharing payments during the renewal period.   See Docket No. 40-7.

The first letter is from the Department to the Nation.[3]   See Docket No. 40-3.   It

---

2  The Nation initially sought alternative forms of relief.   It first sought an order staying enforcement of the judgment if the State would join in a request for further Secretarial review.   Absent such a joint request, which the State declined, it seeks to vacate the judgment.

3  This letter is undated but appears to have been received by the Nation on April 15, 2021.   See Docket No. 40-3, p. 3.

advises that the Secretary of the Interior "did not review or otherwise analyze any revenue sharing payments for the seven-year renewal period of the Compact because the Compact did not provide for revenue sharing during the renewal period."   Id.   It goes on to express concern about the arbitration panel's award and serious concern about revenue-sharing payments during the renewal period.   See id.   The letter concludes by cautioning the parties that the renewal period revenue-sharing payments may not be lawful in light of the absence of the Department's analysis and approval.   See id.

The second letter, dated September 15, 2021, is from the Department to the NIGC. See Docket No. 55-1.   Therein, the Secretary of the Interior relays the same concerns described above and refers the matter to the NIGC for possible initiation of an enforcement action.   See id.

The Nation also submits a third letter, dated September 16, 2021, from the NIGC to the Nation, which advises that the NIGC has begun reviewing the legality of the renewal period revenue-sharing payments in response to a previous inquiry by the Nation and the referral from the Department of the Interior.   See Docket No. 51-1.

### III. DISCUSSION

The Nation maintains that the Department of the Interior's expressed uncertainty regarding the legality of the renewal-period payments coupled with its referral of the matter to the NIGC for possible initiation of an enforcement action constitutes extraordinary circumstances warranting vacatur of the judgment.   Without such relief, argues the Nation, it could suffer extreme and undue hardship by way of an NIGC order requiring it to cease operations for violating IGRA.

The State opposes the motion as procedurally barred and substantively baseless. It maintains that the motion is precluded by the Second Circuit's mandate and Rule 81 (a)(6)(B) of the Federal Rules of Civil Procedure.   Alternatively, it argues that the motion fails on the merits because the Nation has not established extraordinary circumstance warranting Rule 60 (b)(6) relief.

**A. The Second Circuit's mandate does not bar the Nation's motion.**

A district court must follow an appellate court's mandate and give it full effect. Havlish v. 650 Fifth Ave. Co., 934 F.3d 174, 181 (2d Cir. 2019); In re Coudert Bros. LLP, 809 F.3d 94, 98 (2d Cir. 2015).   The scope of a mandate extends beyond express holdings and precludes re-litigation of matters both expressly and impliedly resolved on appeal.   See Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co., 762 F.3d 165, 175 (2d Cir. 2014); Brown v. City of Syracuse, 673 F.3d 141, 147 (2d Cir. 2012); United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001).

"But [a] mandate is controlling only 'as to matters within its compass.'"   In Re Coudert Bros., 809 F.3d at 98 (quoting New Eng. Ins. Co. v. Healthcare Underwriters Mut. Ins. Co., 352 F.3d 599, 606 (2d Cir. 2003)).   That is, an appellate mandate "relates to the record and issues then before the court, and does not purport to deal with possible later events."   Standard Oil Co. v. United States, 429 U.S. 17, 18, 97 S. Ct. 31, 50 L. Ed. 2d 21 (1976) (per curiam).   A district court therefore does not "flout" an appellate mandate by acting on a Rule 60 (b) motion that relies on subsequent facts not considered by the appellate court.   See id.

The State maintains that the Second Circuit's affirmance is the law of the case and

cannot be reviewed or disturbed.   It argues that in attempting to avoid the judgment, the Nation is merely repackaging the same Secretary-approval arguments that the Second Circuit rejected on appeal: that the arbitration panel's award is inconsistent with IGRA and that the dispute should be submitted to the Department of the Interior for further review.   The State therefore contends that the Nation's motion fails to meet the later-event exception in Standard Oil and is thus barred by the mandate.

The Nation disagrees.   It maintains that its present motion does not seek to re-litigate matters resolved by the Second Circuit, but rather, is premised on new information from the Department of the Interior confirming that the Secretary never approved the revenue-sharing payments and referring the matter to the NIGC—two post-appeal developments that the Nation contends warrant vacatur of the judgment.

Having reviewed the parties' arguments, this Court finds that the Second Circuit's mandate does not bar the Nation's motion.   Although the State correctly notes that the Second Circuit considered and rejected the Nation's positions concerning the applicability of IGRA's Secretary-approval provisions and the need to submit the dispute to the Department of the Interior, it did so in the context of reviewing the arbitration award before it, not in connection with a request for Rule 60 (b)(6) relief premised on issues relating to enforcement of the judgment.   See DeWeerth v. Baldinger, 38 F.3d 1266, 1271 (2d Cir. 1994) (finding that "the district court properly determined that the basis for [the plaintiff's] Rule 60 (b) motion had not been decided either explicitly or by necessary implication by [the appellate court], and that it was therefore free to rule on the [Rule 60] application as it saw fit").

Moreover, the facts underlying the Nation's present motion—that the Department of the Interior has now confirmed that it never directly approved renewal period revenue-sharing payments, that it expressed "concerns" about the legality of such payments, and that it referred the matter to the NIGC for possible initiation of an enforcement action—each arose after the Second Circuit's decision.   Consequently, the Second Circuit never considered the present facts and circumstances, which places the Nation's motion within the <u>Standard Oil</u> later-events exception.   The motion is therefore not precluded by the mandate.   <u>See</u> <u>Standard Oil</u>, 429 U.S. at 18; <u>DeWeerth</u>, 38 F.3d at 1270 (recognizing the <u>Standard Oil</u> rule); <u>Fine v. Bellefonte Underwriters Ins. Co.</u>, 758 F.2d 50 (2d Cir. 1985) (recognizing the authority of <u>Standard Oil</u>).

**B.  Rule 81 (a)(6)(B) does not bar the Nation's motion.**

Rule 81 (a)(6)(B) provides that the Federal Rules of Civil Procedure, as applicable, govern proceedings under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 <u>et</u> <u>seq.</u>, except to the extent that the FAA provides other procedures.   <u>See</u> <u>Teamsters Loc. 177 v. United Parcel Serv.</u>, 966 F.3d 245, 255 (3d Cir. 2020) (recognizing that under Rule 81 (a)(6)(B) "the Federal Rules of Civil Procedure apply only to the extent procedures are not provided for under the FAA").   In other words, "[i]f the Federal Arbitration Act covers a procedure, the Civil Rules do not apply."   14 James Wm. Moore, et al. <u>Moore's Federal Practice-Civil</u> § 81.08 (2021).

The State maintains that Rule 81 (a)(6)(B) bars the Nation's motion because the FAA provides the exclusive procedures for challenging or seeking to vacate arbitral awards.   It argues that since the Nation has fully exhausted its challenges to the award

7

under the FAA, it cannot now turn to Rule 60 (b)(6) to mount a collateral attack on the confirmed award or the final judgment.   In response, the Nation argues that Rule 60 (b)(6) applies because the Nation seeks to vacate the district court judgment confirming the arbitration award, not attack the award itself.   The Nation's position is correct.

The FAA does not contain procedures for vacating a confirmed arbitration award. Indeed, "[c]onfirmation is the final step of the FAA's arbitration process."   See Teamsters Local 177, 966 F.3d at 255.   As an initial matter then, the Federal Rules of Civil Procedure apply, including Rule 60 (b)(6), because there are no equivalent "other procedures" in the FAA.

More directly, the FAA itself provides that once a judgment confirming an arbitration award is entered, the judgment "shall have the same force and effect, in all respects, as, *and be subject to all the provisions of law relating to*, a judgment in an action . . .."   9 U.S.C. § 13 (emphasis added).   Rule 60 (b)(6) is a provision of law relating to a judgment in an action.   As one commentator explains: "Once a judgment has been entered confirming an arbitration award, that judgment has the same force and effect as a judgment in a standard civil action and generally is subject to all the provisions of law relating to such a judgment, including the provisions of Rule 60 (b) authorizing a court to grant relief from judgment."   See 14 James Wm. Moore, et al. Moore's Federal Practice-Civil § 81.08 (2021).   Consequently, the FAA itself provides that a judgment confirming an arbitration award is subject to the provisions of Rule 60 (b)(6).   See AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc., 579 F.3d 1268, 1272 (11th Cir. 2009) (holding that a judgment confirming an arbitration award is subject to Rule 60 (b)); Fid. Fed. Bank,

FSB v. Durga Ma Corp., 387 F.3d 1021, 1023-24 (9th Cir. 2004) (noting that a "judgment confirming an arbitration award is treated similarly to any other federal judgment" and affirming the district court's resolution of Rule 60 (b) motion); Baltia Air Lines, Inc. v. Transaction Mgmt., Inc., 98 F.3d 640, 642 (D.C. Cir. 1996) (stating that "Rule 60 (b) is an appropriate vehicle by which to challenge a judgment confirming an arbitration award"); Clarendon Nat'l Ins. Co. v. TIG Reinsurance Co., 183 F.R.D. 112, 117 (S.D.N.Y. 1998) (finding that § 13 of the FAA provides that judgments confirming arbitration awards are subject to Rule 60 (b)).

The error in the State's position is that it characterizes the Nation's motion as one aimed at the arbitration award, not the judgment confirming it.   It therefore mistakenly relies on cases finding that Rule 81 (a)(6)(B) bars challenges to arbitration awards under Rule 60 (b).   See, e.g., Arrowood Indem. Co. v. Equitas Ins. Ltd., No. 13 cv 7680 (DLC), 2015 WL 2258260 (S.D.N.Y. May 14, 2015) (involving an attempt to attack an award under Rule 60 (b) in lieu of a timely petition to vacate under the FAA); Cook Chocolate Co., a Div. of World's Finest Chocolate v. Salomon Inc., 748 F. Supp. 122, 125 (S.D.N.Y. 1990) (involving an effort to "overturn the award under Rule 60 (b)"); Bridgeport Rolling Mills Co. v. Brown, 314 F.2d 885 (2d Cir. 1963) (per curiam) (involving dual applications before the district court to vacate the arbitration award under Rule 60 (b) and the FAA); Lafarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Corp., 791 F.2d 1334, 1339 (9th Cir. 1986) (involving an attempt to vacate an arbitration award under Rule 60 (b) rather than the FAA).   But these cases do not apply because here the Nation seeks to vacate the judgment confirming the arbitration award, not mount an additional attack on

the award itself.   Consequently, Rule 81 (a)(6)(B) does not bar the Nation's motion.

**C. The Nation has not demonstrated that vacatur of the judgment is warranted under Rule 60 (b)(6).**

**1. The Rule 60 standard.**

Rule 60 of the Federal Rules of Civil Procedure governs relief from judgments or orders.   It authorizes a court to grant relief from a final judgment, order, or proceeding for any of the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59 (b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60 (b).   "A motion under Rule 60 (b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."   Fed. R. Civ. P. 60 (c).

Rule 60 (b) motions are reserved for exceptional circumstances.   See United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001).   They are generally disfavored and granted only in "extraordinary circumstances" when it is necessary to "override the finality of judgments in the interest of justice."   Andrulonis v. United States,

26 F.3d 1224, 1235 (2d Cir. 1994); see also Int'l Bhd. of Teamsters, 247 F.3d at 391 ("A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances."); Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986) (noting that "[s]ince 60 (b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances").   Such motions are left to the "sound discretion" of the district court.   In re Lawrence, 293 F.3d 615, 623 (2d Cir. 2002) (citing Parker v. Broad. Music, Inc., 289 F.2d 313, 314 (2d Cir. 1961)).

The proponent of a Rule 60 (b) motion bears the burden of proof.   Int'l Bhd. of Teamsters, 247 F.3d at 391.   That party must "(1) support its motion with 'highly convincing' evidence; (2) show good cause for its failure to act sooner; and (3) prove that granting the motion will not impose any undue hardship on the other parties."   Canini v. U.S. DOJ Fed. Bureau of Prisons, No. 04 Civ. 9049, 2008 WL 818696 (S.D.N.Y. Mar. 26, 2008) (citing Kotlicky v. United States Fid. & Guar. Co., 817 F.2d 6, 9 (2d Cir. 1987)); see also Esposito v. New York, No. 07 Civ. 11612, 2010 WL 4261396, at *2 (S.D.N.Y. Oct. 25, 2010).   When evaluating Rule 60 (b) motions, courts strive to "strike[ ] a balance between serving the ends of justice and preserving the finality of judgments."   Nemaizer, 793 F.2d at 61.

Here, the Nation moves under Rule 60 (b)(6).   "[A] Rule 60 (b)(6) motion must be based upon some reason other than those stated in clauses (1)-(5)," and must be made within a "reasonable time" and demonstrate that "extraordinary circumstances [exist] to warrant relief."   United Airlines, Inc. v. Brien, 588 F.3d 158, 175 (2d Cir. 2009) (citation omitted); Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc., 301 F.3d 54, 59 (2d Cir.

11

2002) (per curiam) (citation omitted); <u>Canale v. Manco Power Sports, LLC</u>, No. 06 CIV. 6131, 2010 WL 2771871, at *4 (S.D.N.Y. July 13, 2010).   For example, relief may be warranted "where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship."   <u>Matarese v. LeFevre</u>, 80 F.2d 98, 106 (2d Cir. 1986) (quotations and citations omitted).

While the Second Circuit has recognized that Rule 60 (b)(6) provides district courts a "grand reservoir of equitable power to do justice in a particular case," <u>id.</u>, it has equally noted that the referenced reservoir "is not a bottomless pit," <u>Stevens v. Miller</u>, 676 F.3d 62, 67 (2d Cir. 2012).   In considering whether extraordinary circumstances exist, the court may consider a "wide range of factors," including, where appropriate, "'the risk of injustice to the parties'" and "'the risk of undermining the public's confidence in the judicial process.'"   <u>See</u> <u>Buck v. Davis</u>, __ U.S. __ 137 S. Ct. 759, 778, 197 L. Ed. 2d 1 (2017) (quoting <u>Liljeberg v. Health Servs. Acquisition Corp.</u>, 486 U.S. 847, 863-64, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988)).

As noted above, the Nation maintains that the Department of the Interior's confirmation that the Secretary never reviewed the renewal period revenue-sharing payments, its doubts concerning their legality, and its referral of the matter to the NIGC for a possible enforcement action constitute extraordinary circumstances warranting relief from the judgment.   It further argues that enforcement of the judgment could result in extreme and undue hardship, including temporary or permanent closure of its gaming facilities, because the Nation cannot lawfully make revenue-sharing payments absent

Secretary approval.   The State vigorously advocates the opposite positions, and this Court ultimately finds insufficient basis to grant the extraordinary relief requested.

> ### 2. The Department of the Interior communications do not give rise to extraordinary circumstances or a risk of extreme and undue hardship to the Nation.

The Nation primarily argues that the judgment must be vacated because the Department of the Interior has now confirmed that the Secretary never reviewed or analyzed revenue-sharing payments for the 7-year renewal period back in 2002 (when the Compact became effective) and therefore never conducted the economic analysis required for such payments under IGRA.   In its letter, the Department writes that "[t]he Secretary did not review or otherwise analyze any revenue sharing payments for the seven-year renewal period of the Compact because the Compact did not provide for revenue sharing during the renewal period."   Department of Interior Letter, Docket No. 40-3, p. 2.   In this Court's view, this representation does not warrant disturbing the final judgment.

It is undisputed that the Secretary reviewed the Compact in 2002 before it was considered approved under 25 U.S.C. § 2710 (d)(8)(C).   See Seneca Nation of Indians, 988 F.3d at 621 ("On November 12, 2002, the Secretary completed review of the Compact and declined to approve or disapprove it.")   And it is further undisputed that the parties agreed in § 14 of the Compact to submit all unresolved disputes to binding arbitration, including whether the Compact provided for revenue-sharing payments during the renewal period.[4]   See id. at 622-23.   Subsequent arbitration resulted in an award finding

---

4 Significantly, no party contends that § 14 of the Compact is inconsistent with IGRA for purposes of the Secretary's approval under 25 U.S.C. § 2710 (d)(8)(C).

that the original terms of the Compact require such payments.   That award has been confirmed and affirmed, and notably, the Second Circuit has held that the renewal term "has already been deemed approved by the Secretary."   Id. at 627 (referring to the 2002 approval).   That the Secretary now disavows specific review and analysis of the renewal term does not change the settled law and facts in this case concerning the scope of initial approval, which the Second Circuit has deemed to include approval of both the arbitration and renewal terms.   See id.

Moreover, the Second Circuit has rejected the Nation's argument that a compact term not approved by the Secretary has no legal force:

> The Nation counters that IGRA makes clear that all terms of a Compact are subject to the Secretary's approval, so a term not approved by the Secretary has no legal force.   However, since the Nation acknowledges that the award is not an amendment and acknowledges that it is bound by the panel's holding that the renewal term itself required payments, the provision of the Compact that it challenges can only be the renewal term and that term—for purposes of this appeal—has already been deemed approved by the Secretary.

Id. at 627.

Similarly, the Second Circuit rejected the Nation's attempt to cleave the Secretary's initial review from Compact interpretation:

> Contract interpretation is a basic competency of courts, and, as discussed above, the parties asked the arbitrators to decide if the renewal provision of the Compact required additional payments.   Moreover, while the Nation stresses that it seeks a review of the question of approval of the payment obligations under the renewal term, not an interpretation of the compact, the two issues cannot be separated in this manner.   While in the first instance [the Department of the Interior] exercised broad discretion to approve or reject the Compact, IGRA does not provide for

14

> subsequent agency review upon an arbitrator's determination
> that a party is required to make further payments under an
> existing compact.

Id. at 629-630.

These determinations, which this Court lacks authority to unseat, foreclose a finding that the Department's representation constitutes an extraordinary circumstance warranting vacatur of the judgment.

The Nation next argues that the Department's reservations about the legality of the disputed revenue-sharing payments and its referral of the matter for a possible enforcement action warrant relief from the judgment.   But a close reading of the Department's concerns and referral reveal that they are premised on several material erroneous assumptions.

First, the Department appears to accept the incorrect suggestion in the Nation's March 21, 2021 letter that Secretary approval is required because the arbitration award constitutes an amendment to the Compact.   Compare Nation's Letter, Docket No. 40-7, p. 3 (asserting that "any exclusivity payment obligation during the Compact extension period constitutes a Compact amendment that requires Interior Department approval to be valid") and p. 9 ("The Nation asserts that requiring the Nation to make payments during the extension period constitutes a Compact amendment requiring Secretarial review and approval, which has not occurred.") with Department of the Interior Letter, Docket No. 40-3, p. 2 (discussing Secretary approval requirement for all "compacts and amendments" and suggesting that "new compact terms" were not submitted for review and approval).

But whether the arbitration award constitutes an amendment to the Compact has been settled in this litigation: it does not.   The arbitration panel squarely rejected the Nation's contention that its interpretation would amend the Compact, finding instead that it was simply interpreting the terms of the already-approved Compact.   See Seneca Nation of Indians, 420 F. Supp. 3d at 103-04 (summarizing the panel majority's award). This Court similarly rejected the Nation's argument that the arbitration panel impermissibly amended the Compact.   See id. at 98, 103, 104-05.   And significantly, the Nation abandoned its rejected amendment argument before the Second Circuit.   See Seneca Nation of Indians, 988 F.3d at 627 ("The Nation disavows the argument that it views the arbitration award as an amendment to the Compact."); see id. ("the Nation acknowledges that the award is not an amendment").   Consequently, the Department's concern that the ordered revenue-sharing payments constitute an amendment to the Compact requiring Secretary approval is misplaced.

Second, the Department is laboring under the mistaken impression that "the Compact did not provide for revenue sharing during the renewal period."   See Department of the Interior Letter, Docket No. 40-3, p. 2.   This wholly ignores the confirmed arbitration award, which finds that the Compact *does* provide for revenue sharing during the renewal period.   The parties specifically agreed in § 14 of the Compact to submit "any dispute, claim, question, or disagreement arising from or relating to this Compact" to binding arbitration.   See Seneca Nation of Indians, 420 F. Supp. 3d at 104 (discussing § 14 of the Compact).   Binding arbitration resulted in a determination that the existing terms of the Compact do in fact require the Nation to make revenue-sharing

payments during the renewal period.   Since that determination has been confirmed by this Court and affirmed on appeal, the Secretary's understanding to the contrary is mistaken.

Third, the Department wrongly suggests that the arbitration award constitutes "new compact terms."   <u>See</u> Department of the Interior Letter, Docket No. 40-3, p. 2.   It writes that "[w]e are concerned that a failure to submit new compact terms for review and approval could set a precedent for those who wish to evade review by the Secretary." <u>Id.</u>   Directly contrary, however, the Second Circuit has determined that no new terms were added to the Compact and that there is no cause for broader concern.

The Second Circuit explicitly found that the panel's interpretation "did not add a new term to the Compact."   <u>Seneca Nation of Indians</u>, 988 F.3d at 627.   It explained that "[a] panel's resort to *evidence* outside the four corners of a contract does not necessarily imply its creation of a *term* outside the contract's scope."   <u>Id.</u> (emphasis in original).   It further noted that "the arbitration agreement left the question of contract interpretation to the panel, and the panel's resolution of that question did not add a new term to the Compact."   <u>Id.</u>   Quite plainly then, no new terms have been added to the Compact.   The Department's understanding to the contrary is incorrect.

The Second Circuit also flatly rejected the Nation's argument—parroted in the Department's letter—that enforcement of the confirmed award "would open the door to widespread evasion of IGRA's secretarial review requirement," finding such concerns

unfounded where, as here, the panel did not introduce additional terms or terms conflicting with the contractual text.[5]  Id. at 628.

Overall, the position reflected in the Department's letters fails to recognize the import of the Second Circuit's decision.   The Second Circuit has settled that the arbitration award is the product of straightforward contract interpretation not subject to the Secretary's approval.   See id. at 621, 628 ("[N]either IGRA nor our case law contains a clear rule requiring secretarial approval of arbitral awards based on extrinsic evidence."). It has held that "IGRA simply requires secretarial approval for gaming compacts, and the regulations address amendments, not interpretations of existing contractual terms," id. at 627, and that "IGRA does not provide for subsequent agency review upon an arbitrator's determination that a party is required to make further payments under an existing compact," id. at 630.   Consequently, this Court finds that the Department of the Interior's

---

5  The Second Circuit's full treatment of this argument was as follows:

> The Nation argues that to allow the panel majority to enforce its interpretation would open the door to widespread evasion of IGRA's secretarial review requirement.   It suggests that affirming the decision would allow parties to evade review through secret side agreements and incorporate illegal terms such as certain types of taxes that are themselves unauthorized under IGRA, 25 U.S.C. § 2710 (d)(4).   Again, this argument rests on accepting the view that the renewal term did not require the payments, which conflicts with the panel's holding.   If this case involved the panel introducing additional terms or terms in conflict with the contractual text, a court might have a stronger basis to determine that this ruling manifestly disregarded IGRA.   Similarly, a court could certainly vacate an arbitration award that interpreted an agreement to require something expressly prohibited by law or statute, insofar as that would show that the arbitrators "willfully flouted the governing law by refusing to apply it."   Schwartz [v. Merrill Lynch & Co.], 665 F.3d [444] at 452 [2d Cir. 2011] (internal quotation marks omitted).   But here, there is no side agreement or separate term that the panel incorporated in this case; the panel held that the existing term required the payments.

Seneca Nation of Indians, 988 F.3d at 628.

concerns regarding the legality of the renewal-period payments are not on solid ground, and that its referral of the matter to the NIGC for a possible enforcement action based on its flawed position does not constitute extraordinary circumstances warranting relief from the judgment.[6]

Nor are these circumstances likely to work an extreme or undue hardship on the Nation.   The Nation fears an NIGC enforcement action prompted by the Department's position that the Secretary never analyzed, considered, or approved the renewal period revenue-sharing payments in contravention of IGRA.   But as explained above, the Second Circuit has determined that the renewal term was deemed approved by the Secretary and that the ordered revenue-sharing payments are *not* subject to additional Secretary approval under IGRA because they are contained in the previously approved Compact as a matter of binding contract interpretation.   See, e.g., Seneca Nation of Indians, 988 F.3d at 627, 630 ("IGRA does not provide for subsequent agency review upon an arbitrator's determination that a party is required to make further payments under an existing compact").   An enforcement action premised on the Department's infirm

---

6 The Nation's reliance on City of Deluth v. Fond du Lac Band of Lake Superior Chippewa—where the court reversed the district court's Rule 60 (b) determination for failure to consider "the congressional policy behind IGRA and the creation of the NIGC, including Congress's express intent that tribes be the primary beneficiaries of Indian casinos"— does not compel a different result.   785 F.3d 1207, 1210 (8th Cir. 2015); see also City of Deluth v. Fond du Lac Band of Lake Superior Chippewa, No. 09-CV-2668 SRN/LIB, 2015 WL 454530 (D. Minn. July 28, 2015) (granting Rule 60 (b) relief on remand).   First, the Rule 60 proceedings in that case emanated from an NIGC enforcement action that definitively concluded that certain payments by the Fond du Lac Band to the City of Deluth violated IGRA, a circumstance not found here.   Second, City of Deluth involved a consent decree filed directly with the federal district court, not a confirmed arbitration award under the FAA arising out of the parties' agreement to resolve gaming compact-related disputes via binding arbitration.   Third, City of Deluth did not involve a federal circuit court's settled determination that IGRA did not apply to the final judgment at issue, which is the case here.   See Seneca Nation of Indians, 988 F.3d at 630 (holding that "IGRA does not provide for subsequent agency review upon an arbitrator's determination that a party is required to make further payments under an existing compact"). The City of Deluth cases are therefore not instructive.

position, which this Court understands is at the review stage, <u>see</u> NIGC Letter, Docket No. 51-1, is thus on weak footing and unlikely to ultimately result in extreme and undue hardship to the Nation.

The Department's fluctuating treatment of the parties' dispute also weakens the Nation's position that it could be subjected to aggressive enforcement resulting in extreme and undue hardship.  As the Second Circuit explained, the Department issued a technical assistance letter at the end of the Compact's initial term relaying its position that the Compact contained 14 years of revenue sharing in exchange for 21 years of exclusivity.  <u>See</u> <u>Seneca Nation of Indians</u>, 988 F.3d at 622.

But once the State invoked its right to arbitrate the dispute, the Department withdrew its technical assistance letter because it "did not provide the certainty available to the parties in arbitration proceedings."  <u>Id.</u>  Later, when the Nation sought Department review of the arbitration award as an amendment to the Compact, the Department refused the request on the basis that it lacked a certification from the State authorizing the purported amendment.  <u>See</u> <u>id.</u> at 624.  Notably, the Department took no position at that time as to whether the arbitration award amended the Compact.  <u>See</u> <u>id.</u>

And now in its most recent letter to the Nation, the Department appears to revoke its earlier deference to the arbitration process and assumes without finding that the arbitration award is an amendment (or new term) to the Compact that requires Secretary approval, without any mention or discussion of the contrary federal court decisions, including the Second Circuit's exhaustive opinion issued just three months before.  <u>See</u> Department of the Interior Letter, Docket No. 40-3.  This history of shifting positions

undermines the notion that the Nation may face extreme and undue hardship as the result of further Department or NIGC administrative proceedings.

For these reasons, this Court finds insufficient basis to conclude that the judgment may work an extreme and undue hardship on the Nation if not vacated, including in the form of closure orders and downstream consequences of the same.

## IV. CONCLUSION

Rule 60 (b)(6) relief is reserved for extraordinary circumstances or situations where a final judgment may work an extreme and undue hardship, neither of which the Nation has demonstrated.   See Int'l Bhd. of Teamsters, 247 F.3d at 391; Matarese, 80 F.2d at 106.   At bottom, the Nation has failed to produce highly convincing evidence that the interests of justice require overriding the final judgment, particularly here, where the final judgment is a confirmed arbitration award under the FAA.   See Andrulonis, 26 F.3d at 1235; Kotlicky, 817 F.2d at 9; cf. Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993) (describing the "twin goals" of arbitration as "settling disputes efficiently and avoiding long and expensive litigation").   It has further failed to establish that vacating the judgment will not impose a hardship on the State, which has been waiting to receive the disputed payments for more than four years.   See Kotlicky, 817 F.2d at 9. The Nation's motion to vacate the judgment will therefore be denied.[7]

---

7 To borrow from the Second Circuit, preservation of the final judgment "does not undermine IGRA's secretarial review requirement . . . Instead, it merely reinforces the principle that where a party chooses to leave contract interpretation to arbitrators, a party cannot invoke that requirement to evade the consequences of its choice."   Seneca Nation of Indians, 988 F.3d at 628.

**V. ORDER**

IT HEREBY IS ORDERED, that the Nation's Motion to Vacate the Judgment (Docket No. 40) is DENIED.

SO ORDERED.


Dated:          December 14, 2021
                Buffalo, New York

<u>s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge
